## MALLORY vs. MARINER.

M. & P., a law firm in Milwaukee, being employed to collect a claim against A. & Co., settled it by taking notes of B. secured by a mortgage of real estate in Walworth county, executed to M., in order to facilitate its discharge. A suit to foreclose the mortgage having been commenced, P. employed C., an attorney in Walworth county, to attend to it, instructing him "if the parties would give a good indorsed note or bank acceptance at

ninety days, and pay all costs," to take it, "as he had had some talk with A. about settling it in that way." About the same time P. told A., who was acting on behalf of B., "that he should leave the notes with C. to settle." No decree was obtained and no settlement made during the term of the Walworth circuit court pending which the instruction was given; and the notes and mortgage were returned to M. & P., but at the next term of said court were forwarded by them to the same attorney with instructions to get a decree. He however made a settlement, receiving in payment a bank draft at sixty days for the greater part of the debt, and the balance in money and notes of third parties. M. having repudiated the settlement, it was *held*, in an action by B. to compel him to discharge the mortgage, &c. 1. That it must be assumed upon the evidence, as against M. & P., that they had authority to settle the claim, and not merely to collect it. 2. That B., having acted in good faith in settling with C., upon a knowledge of an authority once granted him to settle the claim, and without any knowledge that such authority had been in any degree restricted, was entitled to a discharge of his mortgage.

APPEAL from the Circuit Court for *Racine* County.

The facts material to an understanding of the points decided in this case, are stated in the opinion of the court. The mortgage referred to was given by *Mallory* to *Mariner*, to secure the payment of two notes. The complaint alleged that the plaintiff, *Mallory*, had paid the mortgage debt, and that *Mariner* had refused to discharge the mortgage of record or otherwise, although more than seven days had elapsed since he was requested to do so, and since his reasonable charges for doing so had been received by him; and that *Mariner* had threatened to commence an action to foreclose the mortgage; wherefore the plaintiff demanded judgment that *Mariner* might be restrained from commencing any action upon the mortgage; that the mortgage might be declared satisfied, and *Mariner* be required to discharge it of record. The answer of *Mariner* denied that the mortgage had been paid. The circuit court found for the plaintiff, and adjudged that the defendant should execute and acknowledge a satisfaction piece, so that the mortgage might be discharged of record. Judgment was rendered July 17, 1860, a motion for a new trial having been overruled.

*E. Mariner, pro se:*

There is no proof to sustain the allegation of payment. The only proof offered is of an exchange attempted to be made of two notes and a draft at sixty days, and ten dollars

January Term, in cash, with Carpenter, for the notes and mortgage men-
1862. tioned in the complaint. There is no proof of authority in
Carpenter to make that exchange. As attorneys at law,
Mariner & Pratt had no authority to make that exchange
(1 Desauss., 469 ; 4 id., 45 ; 3 Stewart, 23 ; 1 Porter, 212 ; 16
Ill., 272 ; 14 Serg. & R., 317 ; 10 Johns., 220), and could not
delegate such power to Carpenter. 2. There is no proof that
they attempted to delegate such power. Mr. Pratt instruct-
ed Carpenter, at the spring term, to get a decree, but said
that he would take a good indorsed note or bank acceptance
at *ninety* days. Nothing was done under these instructions
at that term, and when the notes and mortgage came again
into Carpenter's hands, it was with specific instructions to
try the action and to do nothing else. Carpenter was not
the general agent of the mortgagee, and it was the duty of the
mortgagor to ascertain the extent of his authority. 3. But
the only authority which Mr. Pratt assumed to give at any
time, was to take an indorsed ninety days' note, or a bank-
er's acceptance. This was at the spring term. When the
ninety days had expired, it was not possible for the instruc-
tion to be carried out, and whatever authority Carpenter had
in that respect, was gone.

*J. J. Pettit*, for respondent.

May 15.    *By the Court*, PAINE, J. This suit was brought to restrain
the defendant from proceeding in a suit to foreclose a mort-
gage, and to compel him to discharge the mortgage, upon
the ground that it had been paid. The material facts in the
case are as follows : *Mariner* & Pratt, a law firm in Milwau-
kee, were employed to collect a claim against Barlow & Co.
in Walworth county, which claim was owned by parties in
New York. The mortgage in question was given as security
on a settlement of that claim, and was executed to *Mariner*
in his own name, for the purpose of facilitating its discharge.
A foreclosure suit was afterwards commenced, and Pratt,
not wishing to wait until the case was reached at the May
term of the Walworth circuit in 1858, employed Carpenter,
a lawyer at Elkhorn, to attend to the case. "At the same
time," he says, "I instructed him that if the parties would

*Margin case caption:* MALLORY v. MARINER.

give a good indorsed note or bank acceptance at ninety days, and pay all costs, I would take it, as I had had some talk with Mr. Barlow (a son-in-law of *Mallory*,) for whose debt these notes were given, about settling the matter in that way." No decree was obtained at the May term, and no settlement was made, and the notes and mortgage were afterwards returned by Carpenter to *Mariner* & Pratt, but at the next September term were again forwarded by them to him, with a letter instructing him to get a decree, but saying nothing in regard to a settlement. He did however then make a settlement, receiving in payment a draft at sixty days for the greater part of the debt, and the balance in money and notes against third parties, and gave up the mortgage. *Mariner* afterwards repudiated this settlement, claiming that Carpenter had no authority to make it, and refused to discharge the mortgage of record, on request.

The whole merits of the case depend on the question whether *Mariner* was bound by the acts of Carpenter. He claims that he was not, and relies on the general rule that an attorney employed merely to bring a suit to collect a debt, has no authority to compromise it, or to extend the credit, or exchange the old securities for new. This principle he claims to be twice applicable in the case—first, to the authority of Mariner & Pratt, as attorneys for Bruff Brothers & Seaver, who owned the claim ; next, to the authority of Carpenter, who was employed by them. The first application fails, for the reason that it must be assumed from the evidence that the authority of Mariner & Pratt was something more than that of mere attorneys to sue and collect the claim. There is no evidence as to what were the specific instructions to them from Bruff Brothers & Seaver, but it appears that in acting under those instructions they negotiated a settlement of the claim, upon which this very mortgage was executed as a security. This is fully sufficient, as against them, to warrant the inference that they had more enlarged powers than those of mere attorneys, and that they still possessed the same powers to settle, the exercise of which had first called this mortgage into existence. And it is also obvious that Pratt must be held to have had the

January Term, same authority as *Mariner*, as both were mere agents, as
    1862.      partners, of the eastern firm.

MALLORY        The question then remains, whether, upon the evidence,
  v.         they were bound by the acts of Carpenter.  It must be con-
MARINER.      ceded that if Carpenter had been employed by them merely
to attend to the foreclosure suit, they would not have been
bound by the settlement which he made.  It must also be
conceded that the letter of instructions sent to him at the
September term, when the mortgage was last forwarded, con-
tains no other authority than that of an attorney to conduct
the foreclosure suit.  Yet although, as between him and his
employers, this might be regarded as a restriction of the
authority which had previously been conferred upon him to
settle the claim and take new securities, we think it cannot
be so regarded to the prejudice of the rights of the mortgag-
or, who acted, so far as appears, in good faith, upon a knowl-
edge of the previous authority, and without any knowledge
that it had been in any degree restricted.  The testimony of
Pratt, that at the May term he authorized Carpenter to settle
and take new paper, has already been quoted.  Barlow also
testified, that at that time Pratt told him "he should leave
the note with Carpenter to settle."  Barlow also says that he
"took it of course" that he "was to deal with Carpenter,"
which was entirely natural and evidently what Pratt intend-
ed to have him understand.  And there can be no doubt
that if the settlement which was afterwards made, had been
made at or about that time, Mariner & Pratt would have
been bound by it.  And we think that the mortgagor, and
Barlow acting for him, had the right, although no settlement
was immediately made, to assume that Carpenter still had
the same authority which they had once been notified that
he had, so long as they found the mortgage still in his po-
session and had no notice that his authority had been in
any manner abridged.  There was no notice originally that
the authority was limited to any particular time, and it was
undoubtedly intended to be left open, as is usual in such ca-
ses, so that the parties might negotiate until they could come
to an understanding mutually satisfactory.  It is evident
that Barlow so understood it, and we think he had a right so

to understand it, and that having dealt with Carpenter in a manner evidently within the scope of the authority which he had once been notified that Carpenter posessed, in good faith, that dealing must be held binding upon *Mariner.* This conclusion is fully supported by the well established rules which hold the principal liable for such acts of the agent as he has held the agent out to the world as having authority to do, notwithstanding private instructions to the contrary, and liable to one dealing in good faith with an agent whose authority had been revoked, but of which the party dealing had no notice.

The judgment must be affirmed, with costs.