## COGGSWELL, Respondent, vs. DAVIS, Appellant.

*January 16 — February 2, 1886.*

PARTNERSHIP: DISSOLUTION. *(1) Change of name, when notice. (2, 6) General reputation: Nonresident partner.*

EVIDENCE: ESTOPPEL. *(3) Insufficient objection. (4) Leading questions: Discretion: Reversal of judgment. (5) Books of account: Charges against one person: Action against another.*

SPECIAL VERDICT. *(7) Refusal to submit questions: Reversal of judgment.*

1. A change of a partnership name which in itself indicates who the individual partners are, may be sufficient evidence of a dissolution of such partnership; but where the name under which the business is transacted gives no indication of the names of the persons composing the firm, a change in such name is not notice of the retirement of a person who was previously known to have been a partner in the business.

2. A partnership having been admitted to exist at one time, it is competent to show a general reputation of its continuance after an alleged dissolution for the purpose of charging a partner who claims to have retired with liability for business done after such alleged retirement with persons who had had dealings with the firm when it existed and who had no actual notice of the dissolution.

3. An objection to evidence upon one ground, if not well taken, may properly be overruled, although the evidence is inadmissible on other grounds.

4. The mere allowance of an answer to a leading question, or a refusal to strike it out, will not be ground for a reversal of the judgment, unless there appears to have been an abuse of discretion.

5. The fact that a party has charged one man with an account upon his books is not conclusive against him in an action to recover for the same claim against another party not named in the account so charged.

6. A nonresident partner who has been known as such must notify his former customers of his withdrawal from the firm, and until notice of such withdrawal is brought home to them he will be considered a partner as to all such customers doing business at the same place and with the same person who represented the firm when he was actually a member thereof; and the reputation in the place of busi-

Coggswell vs. Davis.

ness of his continuing to be a partner is evidence tending to charge him.

7. A judgment will not be reversed for a refusal to submit certain questions as a part of a special verdict, when the answers to such questions most favorable to the appellant could not have changed the result.

APPEAL from the Circuit Court for *Rock* County.

The action was brought to recover the purchase price of cream alleged to have been sold and delivered to the defendants as partners. The facts are sufficiently stated in the opinion.

For the appellant there was a brief by *John M. White-head* and *George G. Sutherland*, and oral argument by *D. Blackman*. They contended, *inter alia*, that the admission of improper evidence is fatal to the verdict and judgment, unless the jury were positively directed to disregard it; and even then the error will not be cured if it appears that their verdict was in any way affected by it. *State Bank v. Dutton*, 11 Wis. 371; *Johnson v. Hamburger*, 13 id. 175; *Remington v. Bailey*, id. 332; *Castleman v. Griffin*, id. 535; *Conklin v. Parsons*, 2 Pin. 264; *Roebke v. Andrews*, 26 Wis. 354; *Johanneson v. Borschenius*, 35 id. 135; *Richards v. Noyes*, 44 id. 614. The admissions of W. J. Davis were not admissible to prove the partnership as against *D. J. Davis*. 2 Greenl. Ev. sec. 484; *Whitney v. Ferris*, 10 Johns. 66; *Brown v. Rains*, 53 Iowa, 81. The fact of partnership cannot be proved by general reputation. *Brown v. Crandall*, 11 Conn. 92; *Mima Queen v. Hepburn*, 7 Cranch, 290; *Halliday v. McDougal*, 20 Wend. 91; *S. C.* 22 id. 264; *Smith v. Griffith*, 3 Hill, 333; *Taylor v. Webster*, 39 N. J. Law, 104; *Benjamin v. Covert*, 47 Wis. 384; *S. C.* 55 id. 160; *Gay v. Fretwell*, 9 id. 186; *Bowen v. Rutherford*, 60 Ill. 41; *S. C.* 14 Am. Rep. 25. It was error to refuse the first instruction asked. *Howe v. Thayer*, 17 Pick. 91; *Holtgreve v. Wintker*, 85 Ill. 470; *Am. L. T. Co. v. Wortendyke*, 24 N. Y. 550; *Barfoot v. Goodall*, 3 Campb. 147.

For the respondent there was a brief by *Buckley & Wickhem*, attorneys, and *C. M. Scanlan*, of counsel, and oral argument by *Mr. Buckley*. They argued, among other things: 1. The admission of statements made by W. J. Davis as against W. J. Davis, and permitted to stand against him alone, could not prejudice the appellant. If such admissions were not evidence as against the appellant he should have asked a special instruction to that effect. *Chapman v. C. & N. W. R. Co.* 26 Wis. 296; *Shaddock v. Clifton*, 22 id. 118, 119. 2. When testimony, otherwise inadmissible for irrelevancy, is called out by one party, it is competent for the other party to examine the witness fully as to matters thus disclosed. *Ketchingman v. State*, 6 Wis. 426; *Furbush v. Goodwin*, 25 N. H. 425; 1 Greenl. Evi. 468. 3. The appellant having actually been a partner in 1882, evidence of a general reputation as to his continuance in the firm was admissible. *Benjamin v. Covert*, 47 Wis. 385; *Young v. Tibbitts*, 32 id. 79; *Clapp v. Upson*, 12 id. 492. The retiring partner not having done anything to notify the public that he has retired from the partnership, it may be presumed that he had knowledge of such general reputation. *Benjamin v. Covert*, 47 Wis. 381; *Meyer v. Krohn*, 2 N. E. Rep. 495, 500. As to those who have had dealings with the firm prior to its dissolution a public notice of dissolution is not sufficient, but actual notice must be given. *Gilchrist v. Brande*, 58 Wis. 184; *Howell v. Adams*, 68 N. Y. 314; *Austin v. Holland*, 69 id. 571; *Zollar v. Janvrin*, 47 N. H. 324; *Bank of Comm. v. Mudgett*, 44 N. Y. 514; *Clapp v. Rogers*, 12 id. 283; *Nat. Bank v. Norton*, 1 Hill, 572; *Graves v. Merry*, 6 Cow. 701; *Vernon v. Manhattan Co.* 17 Wend. 524. 4. The existence of the partnership at one time having been admitted, it will be presumed to have continued as to creditors having no notice of the dissolution and who had previous dealings with the firm. *Benjamin v. Covert*, 47 Wis. 381; Story on Partn. sec. 160; *Conro*

*v. Port Henry Iron Co.* 2 Barb. 56; Parsons on Partn. 411–13.

TAYLOR, J.    This action was commenced in justice's court by the respondent against W. J. Davis, *D. J. Davis*, and Thomas Rankin as defendants.    The action was commenced by attachment on the 7th of March, 1884, and, there being no personal service upon either of the defendants, after due publication as required by law, judgment was entered in favor of the respondent against all the defendants, on the 2d day of April, 1884.   The complaint alleged that all the defendants were partners, and were indebted to the plaintiff in the sum of $157.82.

On the 9th day of April the defendants *D. J. Davis* and Thomas Rankin petitioned the court to set aside the judgment and grant them a trial in the action.    The court granted the order, and fixed the 22d day of April, 1884, for such new trial.    On that day the parties appeared, and the defendants *D. J. Davis* and Rankin filed an answer denying that they, or either of them, were partners of W. J. Davis at the time the indebtedness accrued to the plaintiff and his assignors, and also denied any indebtedness to the plaintiff.    Thereupon the plaintiff discontinued his action against the defendant Rankin, and, after hearing the parties, the justice rendered judgment against W. J. and *D. J. Davis* for $146 damages, and costs of suit.    From this judgment the defendant *D. J. Davis* appealed to the circuit court of Rock county.    Upon such appeal the case was tried in said circuit court by the court and a jury, at the April term, 1885, and the jury found a verdict for the plaintiff for the sum of $159.89 damages against the defendant *D. J. Davis*, upon which judgment was rendered against the said *D. J. Davis*, and in favor of the plaintiff, for the sum of $159.89 damages and $109.99 costs.    From this judgment the said defendant *D. J. Davis* appeals to this court.

Upon the hearing of the appeal the counsel assigns for errors (1) the admission of improper evidence, offered on the part of the plaintiff, which was admitted against the objection and exceptions of the defendant; (2) the refusal to give certain instructions to the jury, as requested by the appellant; (3) that the circuit judge committed errors in his instructions to the jury, to which exceptions were duly taken; (4) refusing to submit certain questions proposed by the appellant as a part of the special verdict demanded by the appellant; (5) submitting certain questions as a part of the special verdict, to which objections were taken by the appellant.

A brief statement of the undisputed facts in this case will, it appears to me, dispose of most of the objections taken by the learned counsel for the appellant: *First.* It is admitted by the answer of the defendant *D. J. Davis* that he and W. J. Davis were partners in the creamery business at Porter's station, near the city of Beloit, in the year 1882; that the business was then carried on as the "Davis Creamery." *Second.* That all the men whose claims are in controversy in this action dealt with said firm in 1882. *Third.* That, in the year 1882, W. J. Davis was the person present most of the time at the place of business of the firm, and that *D. J. Davis* was only there occasionally. *Fourth.* There is no evidence that either of the parties claiming against the firm for cream sold in 1883 were notified of the dissolution of the partnership. *Fifth.* The business was carried on at the same place in 1883, W. J. Davis being there attending to the business in 1883, the same as in 1882. *Sixth.* There was no name affixed at or upon the place of business, either in 1882 or 1883. *Seventh.* Some of the cards distributed in 1883, upon which the customers kept the account for cream delivered, were the same as those used in 1882, having no name on them, and some of them having on them the name "Beloit Creamery

Cream-checks" and others "Creamery Cream-checks." The bank-checks given the customers were, in 1883, signed W. J. Davis, and some witnesses testify that they were signed in the same way in 1882, others that they were signed "Davis Creamery, per W. J. Davis." *Eighth.* The evidence clearly shows that the plaintiff, and the other persons who assigned their claims to him, dealt with the Davis creamery in 1882 under the belief that *D. J. Davis* was one of the proprietors or firm doing the business, although there may have been some misunderstanding as to who were the other proprietors or persons composing the firm during that year.

Upon this state of facts there can be no doubt, under the law, that *D. J. Davis* would be liable to pay the customers furnishing cream for the creamery in 1883, unless they were in some way notified that he had retired from the business. This was what the respondent contended for in the court below, and is the view taken of the case by the learned circuit judge in his rulings as to the admission of evidence, and his instructions to the jury; and the questions submitted to the jury by the court below as a special verdict were in strict accord with this view of the case, as will be readily seen by the questions submitted to them, viz.: "(1) Were *D. J. Davis* and W. J. Davis partners in the creamery business carried on at Porter's station, in this county, in the year and season of 1882? *Answer.* Yes. (2) Under what name was said business carried on in the year 1882? *A.* Davis Creamery. (3) When, if ever, was said firm of *D. J. Davis* and W. J. Davis dissolved? *A.* If ever, January 2, 1883. (4) Was public notice given by publication in any newspaper published in Rock county of the dissolution of said firm doing business at Porter's station? *A.* Yes, in an Evansville paper. (5) Was any actual notice given of the dissolution of said firm to the persons doing business with the same at Porter's station? *A.* No. (6) Did the plaint-

iff, or any of his assignors, have any actual notice of the dissolution of said firm, prior to the 23d day of August, 1883? *A.* No. (7). Did the plaintiff, or any of his assignors, have any actual notice of the withdrawal of *D. J. Davis* from said firm, prior to August 23, 1883? *A.* No. (8) Did the plaintiff deal with said firm in the year 1882? *A.* Yes. (9) Did the plaintiff continue to deal with said firm during the season of 1883 without any knowledge that *D. J. Davis* had retired from the firm? *A.* Yes. (10) Did the assignors of the plaintiff deal with said firm in the year 1882, and did they continue to deal with said firm in 1883, during the season up to August 23, 1883, without any knowledge of the withdrawal of *D. J. Davis* from said firm? *A.* Yes. (11) Was any notice publicly given of the withdrawal of *D. J. Davis* from said firm in the vicinity of the creamery at Porter's station by publication in any newspaper in that vicinity, or otherwise? *A.* No."

In addition to the answers to these questions the jury found a general verdict for the plaintiff for $159.89.

There certainly can be no doubt as to the correctness of the answers to the first, second, third, fourth, fifth, sixth, seventh, and eighth, the first part of the tenth, and the eleventh interrogatories, under the pleadings and proofs in the case; and the only possible claim that can be made in favor of the appellant is that the answer to the ninth and the last part of the tenth interrogatories are not supported by the evidence. The answers to the first four interrogatories are admitted by the defendant's answer in the case, or are based upon the evidence introduced by him on the trial, and the answers to the fifth, sixth, and seventh are abundantly supported by the evidence, unless ·certain facts, which the appellants claim were brought to the knowledge of the plaintiff and his assignors in 1883, were equivalent to actual notice of the dissolution of the firm and the withdrawal of the appellant from the same at the begin-

ning of the season of 1883. There is no question as to the correctness of the answers to the eighth and eleventh interrogatories.

Does the evidence sustain the answers to the ninth and the latter part of the tenth interrogatories? viz.: Did the plaintiff and his assignors continue to deal with said firm during the season of 1883 without any knowledge that *D. J. Davis* had retired from the firm? The answers to these questions the learned counsel earnestly contends are not sustained by the evidence. The claim made is that in 1883 the business was carried on in such a way as to notify all parties dealing with the creamery that a change had been made in the proprietors or partners in the business; and that it was the duty of all persons dealing with the creamery that year to take notice of the change, and inform themselves who were the real persons carrying on the same; and that, as a matter of law, they had no right to suppose the old proprietors or firm were carrying on the same.

The learned counsel for the appellant claims that the alleged change of the name of the creamery from " Davis Creamery " to " The Beloit Creamery," and the signing of the bank-checks by W. J. Davis, personally, instead of "Davis Creamery, per W. J. Davis," were notice that the firm doing business under the name of " Davis Creamery " had been changed, and that it was the duty of the customers to ascertain what such change had been. To this contention on the part of the learned counsel there are two answers: *First*, that the evidence is conflicting as to the alleged change in the manner of doing the business; and, *second*, that the change, if clearly established, does not notify the customers of the retirement of the former partner or partners.

A change of a partnership name which in itself indicates who the individual partners are, may be sufficient evidence of a dissolution of such partnership, and it was so held in

the case of *Barfoot v. Goodall*, 3 Camp. 147. In this case the plaintiff had been dealing with Dickinson, Goodall & Fisher. The checks furnished the plaintiff for drawing upon the firm were for a long time printed "Dickinson, Goodall & Fisher," but some time before the claim on which the action was brought the checks furnished by the firm to the plaintiff were changed to "Dickinson, Goodall & Co.," the name of Fisher being omitted. Afterwards the checks were changed to "Dickinson, Goodall & Dickinson," and it was proved that the plaintiff had used a large number of these checks. Lord ELLENBOROUGH held that the change in the style of the checks, when made known to the plaintiff, made it his duty to inquire what change in the firm had really taken place, and that when he continued to use the new checks it must be presumed that he understood that Fisher had retired.

It has also been held that when the name under which the business is transacted gives no indication of the names of the persons composing the firm, a change in such name is not notice of the retirement of a person who was previously known to be a partner in the business. *Howe v. Thayer*, 17 Pick. 91. In this case the plaintiff proved that there had existed a partnership between the defendants and one Colton, as proprietors and conductors of the "Mount Pleasant Institution in Amherst," commencing in 1827; and that his account was kept with them under the name of the "Mount Pleasant Institution" to a period after April 7, 1830; that in October, 1829, he made a written contract with them under that name to supply them with meats; and that this contract, which expired by its terms in October, 1830, was renewed at that time for another year by the same agent of the institution, and under the same name as before. The defendant Thayer contended that the partnership was dissolved on June 23, 1830, and that at the time of such alleged dissolution Fellows and one Newton formed a

copartnership, and that after that they alone were interested in the concern. On the trial, among other things, it was shown that prior to June 23, 1830, the business of the institution had been conducted under various names: "The Mount Pleasant Institution," "The Mount Pleasant Classical Institution," and "Colton & Fellows;" and that after that day it had been conducted under the names of "The Mount Pleasant Institution" and "Newton & Fellows;" and it was contended that if the plaintiff knew that the business had been so carried on, and that the firm had been changed from "Colton & Fellows" to "Newton & Fellows," before his claim accrued, it was equivalent to a notice of dissolution of the first copartnership. SHAW, C. J., in delivering the opinion, says: "It is obvious that the name or style of this partnership, 'The Mount Pleasant Institution,' had no tendency to inform the community who the persons were who composed the firm; and when the name 'Colton & Fellows' was occasionally used without the addition 'Co.,' or other indication that another was concerned, it had no tendency to disclose the fact that the defendant Thayer was a partner. So the occasional use of the style 'Newton & Fellows' afterwards had no tendency to give notice to the community that the defendant Thayer had withdrawn or changed his relation from what it had been before with the concern. The continued use of the more general designation indicated the continuance and identity of the partnership."

So, in the case at bar, the change of the name of the creamery (if there was a change) from the "Davis Creamery" to the "Beloit Creamery," and the change of the bank-checks used, the first being signed "Davis Creamery, per W. J. Davis," to those signed simply "W. J. Davis," gave no indication that *D. J. Davis*, who was a known and acknowledged member of the firm in 1882, which carried on the creamery business at the same place, had retired from said business. W. J. Davis appeared at the same

place in 1883 as in 1882, and carried on the same business in 1883 the same as in 1882, with the same customers, without anything about the place of business that indicated any change of the proprietors; transacting the business with the same appliances as in 1882; and with no notice of a change in the proprietors, except that indicated by the name printed on the cards upon which the accounts for cream received were kept, and the change in the form of signature to the bank-checks. Admitting that the cards used in 1883 were all as claimed by the appellant, and the bank-checks were signed as he claims, still we think these changes would not be a sufficient notice of the retirement of *D. J. Davis* from the business to release him from liability for the cream furnished in 1883 by customers who dealt with the firm in 1882. These facts would be competent evidence on the part of the defendant upon the question as to whether the customers had notice of the change of the firm; but standing alone they would not be conclusive, and the question would still be one of fact for the jury and not of law for the court; and as, in addition to this, the evidence on the part of the plaintiff tended to show that the changes claimed by the defendant were not in fact made, it was clearly the duty of the court to submit the question as one of fact for the jury, under proper instructions. Parsons on Part. (3d ed.), *413, *414, and note "D."

Under the proofs in the case there can be no reason for setting aside the verdict on the ground that it is not supported by the evidence.

The only other question in the case is whether any errors were committed in the course of the trial. The learned counsel for the appellant assigns a large number of rulings of the court during the course of the trial as errors. We will give them a brief consideration. The first objection is to the evidence given by the witness Porter that W. J. Davis claimed to him that he owned one fifth of the factory and

manufacturing establishment in Chicago. This evidence was probably immaterial, but it could not injure the appellant, as it related to a conversation had in 1882, when it is admitted that W. J. Davis was a partner with the defendant in the business at Porter's station.

The second and third objections were to testimony as to the alleged reason given by W. J. Davis for the change of the name from "Davis Creamery," in 1882, to the "Beloit Creamery," in 1883. On the second objection the court restricted the effect of this evidence to W. J. Davis, and to the third objection it was held competent as being a proper cross-examination of the witness as to a matter upon which the defendant had examined the witness. We can see no error in these rulings.

The fourth, fifth, and sixth objections are to evidence as to whether it was the general understanding or reputation in the neighborhood that *D. J. Davis* was a member of the firm that carried on the business. So far as these questions called for the reputation in 1882, they could not have prejudiced the defendant *D. J. Davis*, as he admitted in his answer that he was a partner in 1882; and that fact being admitted, it was competent, within all the rules, to show that such reputation continued after an alleged dissolution of such admitted partnership, for the purpose of charging the partner who claims to have retired from the business, with liability for the business done after such alleged retirement with persons who had dealings with the firm when it existed, and when no actual notice had been given of the dissolution. See *Benjamin v. Covert*, 47 Wis. 375, 382, and 55 Wis. 157.

The seventh objection was to evidence which could not by any possibility have prejudiced the defendant.

The eighth objection was to this question to the witness George Porter, who was neither a party to the action nor an assignor under whom the plaintiff claimed: "Did you

ever receive any notice of the dissolution of that partnership?" referring to the partnership which existed in 1882. This question was probably an improper one, as the fact that the witness had not received notice of such dissolution would not tend to prove that the plaintiff had not; and at the time the question was asked the witness the defendant had not given evidence tending to show that he had given the witness such notice. See *Howe v. Thayer*, 17 Pick. 91, *supra*. But the question was not objected to on that ground, but on the ground "that plaintiff had not shown any partnership, because it must be shown that the goods were sold to the firm in 1883, and because this suit was commenced by attachment against three parties, and they have sworn to a debt against those parties, and are bound by that affidavit." At the time this objection was made the defendant had admitted by his answer that he was a partner in 1882, and the suit had been discontinued as to Rankin before the trial in the justice's court. If the evidence was inadmissible as not tending to establish any issue in the case, the objection of the defendant did not go upon that ground, and so was properly overruled.

The ninth objection, to the question, "Who were proprietors that year of the creamery?" was properly overruled. As was well said by the court, if the witness knew the fact it was proper he should state it. That was a question clearly within the issues in the case.

The tenth objection was to the overruling of a motion by the defendant to strike out the answer of the plaintiff as a witness to the following question: "He did not deny, then, that he was a partner?" *Answer*. "No." After the question had been asked and answered, the defendant moved to strike out the answer as improper. The answer seems to be in response to the question, and if there was any impropriety about the matter, the impropriety was in the ques-

tion; but to this there was no objection. From the remark made by the court it would appear the objection was not to the competency of the testimony, but as to the form of the question. The mere allowance of an answer to a leading question, or a refusal to strike out an answer because given in response to a leading question, will not be sufficient ground for a reversal of a judgment by this court, unless in a case which shows a clear abuse of the discretion of the court in allowing answers to such questions.

The eleventh, twelfth, and thirteenth objections were to the evidence of the assignment by the witness Barrus of his claim to the plaintiff. These objections are based on the fact that the account so assigned was made out against "Davis & Rankin, successors of Davis & Fairlamb." We think the objections to showing the assignment were properly overruled. Although the plaintiff could not recover upon a claim against Davis & Rankin in this action against Davis & Davis, still, having shown that the claim of Barrus upon the account against Davis & Rankin was assigned to him, he might, if he could, show that the Davises were liable for the payment of such claim. The fact that the account had been charged to Davis & Rankin would not be conclusive on the plaintiff that Davis & Davis were not liable thereon. This court has repeatedly held that the fact that a party has charged one man with an account upon his books of account is not conclusive against him in an action to recover for the same claim against another party not named in such account so charged upon his books. *Champion v. Doty*, 31 Wis. 190.

The fourteenth, fifteenth, sixteenth, seventeenth, nineteenth, twenty-first, twenty-second, twenty-third, twenty-fourth, and twenty-fifth objections and exceptions were to the submission by the court of the interrogatories to the jury as their special verdict, except the fourth. As said

above, we think these interrogatories very fairly and fully submitted all the facts necessary under the evidence to make a perfect special verdict.

The eighteenth, twentieth, and the remaining exceptions from the twenty-fifth to the thirty-first, are exceptions to the instructions given by the judge to the jury, or to his refusal to give the instructions requested by the defendant. The two instructions asked and refused were very properly refused as not the law of this case. The first instruction asked, "that no notice of dissolution is required unless the business is continued in the same firm name by one of the former partners," has no application to a case of the kind at bar, where the name in no way indicates who the members of the firm are, and the change does not indicate that any one of the former partners has withdrawn from the business. The second instruction was equally improper under the facts of this case.[1] The appellant being a non-resident, and an admitted and known member of the firm in 1882, must notify his customers of his withdrawal, or he will be considered a partner as to all such former customers doing business at the same place with the same person who represented the firm in 1882, until knowledge is brought home to them of his withdrawal in some way; and the reputation in the place of business of his continuing a member of the firm is evidence tending to charge him, although under the circumstances of this case no such proof of reputation was needed to continue his liability.

After reading the charge of the learned circuit judge we can find nothing in it which was not justified by the law under the proofs in this case. The charge as a whole is

---

[1] This instruction was as follows: "Before any person can be bound by a general reputation of being a partner, he must be a resident of the place where such reputation is said to prevail, or must have been informed of such reputation." — REP.

fair, and correctly presented to the jury the questions of law which should govern them in determining the facts.

The learned counsel also assigns as error that the court refused to submit the following interrogatories to the jury as a part of their special verdict: "(1) Whose name was subscribed to the monthly statements and bank-checks given in payment for cream in 1883? (2) Was *D. J. Davis* at the creamery at Porter's station between the 2d day of January, 1883, and the 23d of August, 1883? (3) Was the cream sued for in this case sold by the plaintiff and the assignors in the months of July and August, 1883, to *D. J. Davis* and W. J. Davis? (4) Under what name was the creamery business conducted at Porter's station in the months of July and August, 1883? (5) Did *D. J. Davis* know that W. J. Davis was issuing any creamery tickets on monthly statements during the season of 1883, on which were printed the words 'Davis Creamery'?"

Had all these questions been submitted, and had the jury found that the monthly statements and bank-checks were all signed by W. J. Davis; that *D. J. Davis* was not at Porter's station in 1883; that the cream was not sold to *D. J. Davis* and W. J. Davis by name; that the creamery business in 1883 was called the "Beloit Creamery," instead of the "Davis Creamery," and that *D. J. Davis* did not know that his former partner was using any creamery tickets or monthly statements during 1883 on which were printed the words "Davis Creamery,"— still the plaintiff would have been entitled to a verdict upon the other findings on the questions submitted by the court. The favorable answers to those questions would simply have been evidence tending to show that the plaintiff and his assignors had notice of the withdrawal of *D. J. Davis* from the firm; but they would not be conclusive evidence of that fact, as we have shown above. There was no error, therefore, in refusing to sub-

mit these questions to the jury, as the most favorable answers to these questions for the defendant would not have changed the result.

The views taken by the learned circuit judge of this case upon the evidence, are fully sustained by the numerous authorities cited by the learned counsel for the respondent, both from this and other courts, and need no further citations in this opinion.

*By the Court.*— The judgment of the circuit court is affirmed.