McDermott vs. Jackson.

97 64
97 616,

97 64
99 501

97 64
102 280
s102 421

97 64
108 561

97 64
111 7337
54 LRA 680

97 64
113 7389
113 10339

97 64
114 10517

97 64
117 7288

McDERMOTT, Appellant, vs. JACKSON, Respondent.

*September 8 — September 28, 1897.*

*Agency: Principal's liability: Notice: Ratification: Evidence: Court and jury.*

1. A question whether the witness made any investigation as to a certain matter does not call for hearsay evidence, although testimony as to such investigation might be objectionable on that ground; and to overrule an objection to the question, made on the sole ground that the evidence would be hearsay, is not error.

2. A judgment will not be reversed because of the admission of improper evidence as to uncontroverted facts; nor because of the admission of immaterial evidence, which probably did not or was not likely to prejudice the rights of the appellant.

3. Where the court overrules a general objection to evidence which is admissible for some purpose though not for the purpose for which it was offered, and admits such evidence, it is not bound to limit the effect thereof.

4. The allowance of leading questions is discretionary with the trial court, and does not constitute error unless there is an abuse of discretion. The admission of an answer to a question, objected to as leading, which, if prejudicial at all, is so only because it is irrelevant and immaterial, is not ground for the reversal of a judgment.

5. A question which calls for the witness' conclusion of either law or fact should be excluded, those of law being for the court, and those of fact for the jury.

6. One who, as general agent for another, has full discretionary power to carry on his principal's business and conduct it according to his own discretion, to buy goods on credit or otherwise, to attend to the payments therefor, and to procure funds for that purpose as occasion may require, has, as incident thereto, the power to borrow money in his principal's name when necessary in such business.

7. Upon proof that an agent had for years had charge of his principal's business, managing it apparently as his own, buying goods and incurring large indebtedness without objection by the principal so far as the public knew, *held*, that it was a question for the jury whether he had authority to borrow money on the credit of his principal.

McDermott vs. Jackson.

8. Proof that a letter was mailed in time for the person addressed to have received it in the regular course of the mail is *prima facie* evidence that he received it.

9. A letter written by plaintiff's attorney to the defendant, three days before commencing a suit against him, stating that money had been loaned by the plaintiff to defendant's agent and had been used by him in the defendant's business, is notice not of the fact that the money had been so used, but merely of the plaintiff's claim that it had been. Such a notice, given three days before suit, does not, as a matter of law, give the defendant a reasonable time to inquire into and ascertain the facts, and return the money.

10. If a principal, after he has knowledge that money has been loaned to his agent on his credit and used in his business, refuses to return the money, he thereby ratifies the loan, though it was unauthorized when made.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Reversed.*

The defendant, for many years prior to March 13, 1895, was the owner of a jewelry store conducted in the name of *A. Jackson*, in Eau Claire, Wisconsin. Much of the time he was away from the store, and during all the time it was largely in charge of his son, Arthur T. Jackson. An employee by the name of Andrew Pruher assisted in such management, particularly when the defendant was away. For years it was defendant's custom during the winter months to spend his time on a farm which he owned in the state of Florida, leaving the store wholly in charge of his son, assisted by Pruher. In the early part of the winter of 1894 defendant departed for his Florida farm. He was largely in debt at the time for goods bought for the store, though the evidence tends to show that he did not know such was the fact. The business had been run very carelessly for a long time so that defendant did not know definitely about his affairs. When he went away, he left, as he supposed, money enough, with receipts from sales and collections, to meet current bills. He gave no authority to his son Arthur to purchase goods on credit. Defendant did not return from

McDermott vs. Jackson.

Florida till May 30, 1895. In March, prior to such return, there was pressing necessity for money to meet past-due bills, some of which were in the hands of attorneys for collection. In this condition of things the son Arthur borrowed $500 of plaintiff on his father's credit, gave a promissory note executed in the name of the defendant therefor, and used the money in his father's business. Soon after defendant returned he was informed of the existence of the note. When the note became due plaintiff's attorney wrote a letter to defendant and sent it to him by mail, notifying him that the consideration for the note was used in the store business, and demanding that he either pay it or return the consideration. This action was thereafter brought, and two causes of action set forth in the complaint, one for a recovery on the note and the other for a recovery of $500 money had and received.

The complaint and answer raised the issues covered by the special verdict, which was as follows:

"Question 1. Was Arthur Jackson authorized by *Andrew Jackson* to purchase goods of the character carried by the latter as a merchant, upon credit, during the absence of *Andrew* in Florida during the months of January, February, and March, 1895? Answer, No.

"Ques. 2. Was the money received by Arthur Jackson from the plaintiff upon the note in question, paid, laid out, and expended in the business carried on by *Andrew Jackson?* Answer, Yes.

"Ques. 2½. If you answer question 2 in the affirmative, then did *Andrew Jackson* have knowledge of that fact prior to the commencement of this action? Answer, No.

"Ques. 3. Did *Andrew Jackson*, prior to going away in December, 1894, forbid Arthur Jackson from purchasing goods on credit? Answer, Yes.

"Ques. 4. Did Arthur Jackson, during the absence of *Andrew*, purchase diamonds upon the credit of said *Andrew?* Answer, Yes.

McDermott vs. Jackson.

"Ques. 5. Did such diamonds, or any considerable portion of them, go into the store and were then resold in the ordinary course of business? Answer, No.

"Ques. 6. Did Arthur Jackson take and convert a large amount in value of such diamonds to his own use? Answer, Yes.

"Ques. 7. Did *Andrew Jackson*, at the time he left for Florida in the winter of 1894, leave on hand at the store sufficient goods, with what money he left with his employee, Pruher, for the necessities of, and proper use in, the business, as Arthur Jackson knew he desired to have it conducted? Answer, Yes."

Plaintiff's attorney requested the court to submit this question: Had Arthur Jackson authority from the defendant to borrow money on credit to be used in defendant's business, on the 13th day of March, 1895? which was refused, and due exception was taken to such refusal. Plaintiff moved the court to strike out of the special verdict, questions 2½, 4, 5, and 6, and the answers thereto, because such answers were contrary to the undisputed evidence, and for judgment in plaintiff's favor for $500 with interest, as prayed for in the complaint, which motion was denied and the ruling duly excepted to. A motion was thereupon made to set aside the verdict and for a new trial, which was denied. Judgment was thereupon, on defendant's motion, rendered in defendant's favor, and plaintiff appealed.

For the appellant there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*.

*C. T. Bundy*, for the respondent, argued, *inter alia*, that the retaining by a principal of money received through an unauthorized act of his agent, in order to constitute a ratification of such act must be with full knowledge of all the material facts. Story, Agency, § 239, note 1; *Combs v. Scott*, 12 Allen, 493; *Murray v. C. K. Nelson L. Co.* 143 Mass. 250; *Nixon v. Palmer*, 8 N. Y. 398; *Smyth v. Lynch*, 7 Colo. App.

383; *Brown v. Bamberger*, 110 Ala. 342; *McClelland v. White-ley*, 15 Fed. Rep. 322; *Holm v. Bennett*, 43 Neb. 808; *Craig-head v. Peterson*, 72 N. Y. 279. Notice obtained at the trial, or notice from the plaintiff's attorney of what he claims to be the facts, is not sufficient to charge the principal with knowledge thereof, upon which to base a ratification. *Wheeler v. N. W. Sleigh Co.* 39 Fed. Rep. 347, 351, 352; *Ætna Ins. Co. v. N. W. Iron Co.* 21 Wis. 468; *Gulick v. Grover*, 33 N. J. Law, 472; *Bohart v. Oberne*, 36 Kan. 284. An agent having authority to manage a business has no implied authority to borrow money in the name of his principal. 1 Am. & Eng. Ency. of Law (2d ed.), 1024–5; 1 Parsons, Contracts, 42, note *e;* 1 Chitty, Contracts (11th Am. ed.), 293; *Perkins v. Boothby*, 71 Me. 94; *Rossiter v. Rossiter*, 8 Wend. 494; *Bickford v. Menier*, 107 N. Y. 490; *Hawtayne v. Bourne*, 7 Mees. & W. 595; *Heath v. Paul*, 81 Wis. 532.

MARSHALL, J. It is first assigned as error that the court admitted incompetent evidence against plaintiff's objections. We are unable to discover any prejudicial error in that regard. Many questions are referred to which the court allowed to be answered against plaintiff's objections, but a careful examination of them fails to show any ground for holding that any prejudicial error was committed. A few of the alleged objectionable questions will be referred to.

Defendant was asked whether he made any attempt to discover what became of his money and goods,— what his son had done with them. This was objected to upon the ground that it was hearsay and that it assumed that Arthur Jackson had done something improper with the goods. Obviously, whether defendant made an investigation was not hearsay. The question called for an affirmative or negative answer, not for what defendant did by way of investigating in case any was made. As the trial judge said, the latter might or might not be hearsay, but was not involved in the

McDermott vs. Jackson.

question. No reason is perceived for sustaining the objection upon the ground assigned. It was properly overruled.

In answer to the question, "Do you know anything about the condition of your business at the time you left, as to the indebtedness of the concern?" witness answered, "I supposed we did not owe only just the Jacobson bill." Plaintiff's attorney moved to strike out the answer, in effect, because not responsive to the question. Obviously, what the witness supposed was immaterial, yet we are unable to see how the answer did 'or could have worked any harm to plaintiff. The evidence is practically undisputed that defendant was indebted to a large amount when he went to Florida, and that he did not know the facts in that regard. A judgment is never disturbed for the admission of improper evidence as to uncontroverted facts (*Cannon v. Home Ins. Co.* 53 Wis. 585); nor can a judgment be disturbed for the admission of immaterial evidence unless it probably did, or was likely to, prejudice the rights of the appellant (*Noonan v. Ilsley,* 22 Wis. 27; *Kellogg v. Adams,* 51 Wis. 138; *Best v. Sinz,* 73 Wis. 243).

This question was asked of defendant, and answered against plaintiff's objection: "You may give your best judgment as to the amount which your stock was reduced during the time you were gone." Also this question: "About how much of unpaid bills were there when you returned?" The objections to the questions were general. They had a bearing on the purpose for which the money was borrowed and the necessity therefor, and the subject of ratification, and were proper for such purposes. Though they may have been improper for the purpose for which they were asked, the court was not called upon, in response to a general objection, to limit the effect of the answers.

Defendant was permitted to answer this question against plaintiff's objection that it was leading: "I understand that your testimony was to the effect that a large amount of this

McDermott vs. Jackson.

$18,000 indebtedness, that you paid since your return, was for diamonds?" And to the question, "Did you look to see whether this amount of diamonds was added to the stock during your absence?" defendant answered: "No, it was not." Plaintiff moved to strike out the answer as not responsive. The first question was directed to what the witness had previously testified to. The allowance of a leading question in regard to that was discretionary. The rule is that the allowance of leading questions is discretionary with the trial judge, and unless there be an abuse of such discretion such allowance does not constitute error. *Coggswell v. Davis*, 65 Wis. 191. The answer which plaintiff moved to strike out, if prejudicial at all, was so upon the ground of being irrelevant and immaterial. No objection on that ground was urged. The rule is that where an objection is made on an untenable ground, or on a ground that works no prejudice, and is overruled, such ruling furnishes no cause for reversing a judgment, because the admission of the evidence against objection on some other ground would have constituted harmful error. *Coggswell v. Davis, supra.*

There are some other objections to rulings on plaintiff's objections to evidence, but all the more important have been mentioned, and the others have been carefully considered, with the result before stated that no error in that regard appears that can work a reversal of the judgment.

It is also assigned as error that the court sustained an objection by defendant to the following question propounded by plaintiff's counsel: "Does it make any difference to you, *Mr. Jackson*, whether you borrowed the money after you returned, to pay those drafts, or whether Arthur borrowed it before you returned to pay them?" Defendant had testified that after he returned he was obliged to borrow money to pay store debts. There was evidence tending to show that the debts were less on his return than when he went away, and that they had been reduced in part by the money

borrowed from plaintiff.    On that state of the case the ques-
tion was propounded.    The meaning of the question clearly
was, whether it made any difference to *Jackson* in a legal
sense, or in the actual amount which he was obliged to pay,
of store debts, assuming that he was liable to plaintiff and
that the money borrowed of him was used to pay those debts.
In either view, the objection to the question was properly
sustained.    It called either for a conclusion of law or fact:
if of law, it was something with which the jury had noth-
ing to do; if of fact, it was a conclusion to be drawn by the
jury and not by the witness.

It is further assigned as error that the court refused to
submit the question of whether Arthur Jackson had author-
ity to borrow money on the credit of defendant at the time
the money was borrowed of plaintiff.    It is unquestionably
the law that mere authority to manage a business does not
carry with it incidental authority to borrow money, or to
give commercial paper, in the name of the principal, unless
such acts are a part of such business.    *Heath v. Paul*, 81
Wis. 532; *Webber v. Williams College*, 23 Pick. 302; Daniel,
Neg. Inst. §§ 291–294, and cases cited.    But it is just as well
established that general authority to an agent to conduct a
business in the principal's place and stead and carry it on in
his discretion, carries with it authority to do all things rea-
sonably necessary therefor, according to the ordinary course
and usage of such business (1 Am. & Eng. Ency. of Law, 363),
including authority to borrow money where that is neces-
sary.    *Bickford v. Menier*, 107 N. Y. 490.    The general rule
is that every delegation of power to an agent, either ex-
pressly or by implication, carries with it authority to do
whatever is necessary to effect the main power conferred,
and which is not forbidden.    Mechem, Agency, § 280.    To
this should be added: and the apparent incidental authority,
so far as it affects parties who, in good faith, without neg-
ligence, deal with the agent, cannot be limited by secret in-
structions from the principal forbidding its exercise.

There is respectable authority that a general agency to conduct business in the name and stead of the principal, even carries with it power to make commercial paper (*Odiorne v. Maxcy,* 13 Mass. 178; *White v. Westport Cotton Mfg. Co.* 1 Pick. 215); but the great weight of authority is the other way (*McCullough v. Moss,* 5 Denio, 567; *New York Iron Mine v. First Nat. Bank,* 39 Mich. 644; *Perkins v. Boothby,* 71 Me. 91; *Davidson v. Stanley,* 2 Man. & G. 721; Byles, Bills (6th ed.), *32; Chitty, Bills, *29, *30; Daniel, Neg. Inst. § 292; *Brown v. Parker,* 7 Allen, 337). There is evidence here tending to show that Arthur Jackson was a general agent for the defendant, with full discretionary power to run the jewelry business in the defendant's place and stead, very much as he saw fit: to buy goods on credit or otherwise, to attend to the payments therefor, to procure funds as occasion required, and generally to conduct the business as his judgment might dictate. If he possessed such power, then, as incident thereto, he possessed power to borrow money, when necessary, in the exercise of the general power conferred. The question should have been submitted to the jury in this view, under proper instructions. But the question was broad enough to, and did, cover the subject of implied authority, in regard to which there was a large amount of evidence proper for the consideration of the jury.

It was not necessary, by any means, that Arthur Jackson should have had express actual authority in order to enable him to bind the defendant. If a principal so conducts his business, either through negligence or otherwise, as to lead the public to believe that his agent possesses authority to contract in the name of the principal, such principal is bound by the acts of such agent, within the scope of his apparent authority, in so contracting with any person who, upon the faith of such holding out, believes, and has reasonable ground to believe, that the agent has such authority, and in good faith deals with him, even though such agent have express secret instructions to the contrary. If the principal, by his

conduct, imparts to his agent a particular character, he is
legally responsible to innocent third persons for all respon-
sibilities which would be incident to such character if it ex-
isted by express authority, and without regard to any secret
instructions. Mechem, Agency, §§ 278, 279; *Mallory v. Mar-
iner*, 15 Wis. 172; *Kasson v. Noltner*, 43 Wis. 646; 1 Am. &
Eng. Ency. of Law, 353; *Lawson v. C., St. P., M. & O. R. Co.*
64 Wis. 447. The question in such a case is, Did the third per-
son, because of appearances for which the principal was
responsible, believe, and have reasonable ground to believe,
that the agent possessed power to act for the principal in the
particular transaction? If such third person was, in the exer-
cise of reasonable prudence, justified in believing that the
agent possessed the necessary authority, then the principal
is responsible to such third person the same as if the agent
possessed all the power he assumed to possess.

Applying the foregoing, it is very clear that the question
refused by the court should have been submitted, with
proper instructions covering the subject of actual and ap-
parent power as well. There was evidence tending to show
that plaintiff for years paid but very little attention to his
store business; that the son was the person who appeared to
be managing it, with full powers; that he bought goods and
incurred large indebtedness therefor, all without objection
from defendant, so far as the public or plaintiff knew. There
was evidence tending to show that for a long term of years
the son conducted the business very much as if he were the
proprietor of it; that he was, to all intents and purposes, a
general agent with full power to run such business in his
discretion. He testified to the effect that the store had been
so operated for fifteen years before the note was given; that
the father never worked there except now and then a day
during the holidays; that he, Arthur, decided what goods
to buy and had general charge of the business of buying and
selling the goods and looking after the payment of bills, and

providing money for that purpose; that it was his custom to indorse checks, to accept drafts in the defendant's name, and to pay them at a future day; that for years he had exercised his discretion in respect to what goods to buy, whether on credit or for cash, when to buy, and how to buy.

This case is entirely unlike *Heath v. Paul*, 81 Wis. 532. There the agent had general charge of the store, with authority to make checks and accept drafts at the bank for goods bought and to pay store expenses. It was held that such facts were not sufficient to warrant the jury in finding that the agent had authority to borrow money. The evidence here tends to show further, as stated, that the agent had exercised all the authority of a principal in the store business for many years, and had been permitted during that time to incur indebtedness at his discretion, and there was pressing necessity to pay some of such indebtedness for the protection of the business at the time the money was borrowed of plaintiff. Under such circumstances it certainly should have been left to the jury to say whether, from plaintiff's standpoint, Arthur Jackson had authority to borrow money on his father's credit. In this connection, in view of some questions which the trial court deemed material, and which may be the subject of evidence and discussion on another trial unless noticed here, it is determined that if Arthur Jackson had apparent authority to borrow money of plaintiff, whether he created the necessity therefor by unfaithfully appropriating defendant's goods or money or both, to his own use, of which plaintiff had no knowledge, are matters entirely foreign to this case, and do not affect defendant's liability in any way whatever. *Odiorne v. Maxcy*, 13 Mass. 178; *Atlantic Cotton Mills v. Indian Orchard Mills*, 147 Mass. 268.

The jury found that the money borrowed of plaintiff was used in defendant's business in payment of debts incurred for goods, and as bearing on the subject of ratification this

question was submitted to the jury: "If you answer that
the money was used in defendant's business, did he have
knowledge of that fact prior to the commencement of this
action?" The evidence bearing on such question was, mainly,
that a few days before the action was commenced, plaintiff's
attorney sent to defendant through the mails a letter noti-
fying him that the money was so used and requesting him
to pay the note or return the consideration. Defendant did
not deny having received the letter. He said he did not
remember having received it. That did not weaken the
*prima facie* effect of the evidence that the letter was sent
through the mails in time for defendant to have received it
before the action was commenced. Proof of the mailing of
a letter in time to reach the person to whom it was addressed,
in the regular course of the mails, *prima facie* establishes
the fact that it was so received. Jones, Ev. § 46, and cases
cited. Assuming that the jury did not intend to say that
the defendant did not, before the commencement of the
action, receive the letter, the instruction which the court
gave, and which was duly excepted to, must have had con-
trolling influence. It was as follows, speaking of the letter:
"Now, that isn't notice to him, or did not inform him of itself,
that that money had been used in the business. At most, it
was a mere notice to him that plaintiff claimed that the
money was used in the business. . . . Whether that was
sufficient to put *Mr. Jackson* upon inquiry might be another
question; but you take the notice itself, and the testimony of
the witnesses, and the character of the transaction, and then
answer the question and determine whether *Andrew Jackson*
knew before this action was commenced that the money that
Arthur got from *Thomas McDermott* was expended in the
business and for *Andrew Jackson's* benefit." The jury were
thus required to say whether or not defendant had knowl-
edge. They were told that notice of a fact or claim, sufficient
to put a person upon inquiry, was not of itself knowledge of

the fact. We perceive no error in that. No instruction was asked in respect to the duty to inquire or the result of such duty in respect to charging defendant with knowledge of such facts as such inquiry, pursued with reasonable diligence, would have brought to his attention; if it had been asked, and was refused, a different question would be presented.

Error is further assigned on the ruling of the trial court denying plaintiff's motion for judgment. The motion was based on the theory that the evidence conclusively shows that defendant refused to return the money obtained from plaintiff after notice that it was used for defendant's benefit; and that such fact, with the finding of the jury that it was so used, constituted in law a ratification of such borrowing, and rendered defendant liable therefor, notwithstanding the jury found that he did not have knowledge of the facts before the commencement of the action.

The principle that a person cannot retain the avails of an unauthorized contract, made for his benefit by another assuming to act as his agent, and repudiate the responsibilities of such contract, and that any attempt so to do, with full knowledge of the facts, constitutes a ratification of the unauthorized act, and creates a liability on the part of such person to the same extent as if such contract were originally authorized, is familiar. The law governing the subject has often been applied by this court and is elementary. *Wilson v. Groelle,* 83 Wis. 530; *Morse v. Ryan,* 26 Wis. 356; *Kickland v. Menasha Wooden Ware Co.* 68 Wis. 34; *Carpenter v. Momsen,* 92 Wis. 449; Mechem, Agency, § 167; *Perkins v. Boothby,* 71 Me. 91; *Nichols, Shepard & Co. v. Shaffer,* 63 Mich. 599; *First Nat. Bank v. Oberne,* 121 Ill. 25. This principle applies where the agent, in excess of his authority, borrows money on the credit of his principal and with it discharges debts of the principal in the business in which such agent is engaged.

*Perkins v. Boothby, supra,* which is confidently referred to by plaintiff's counsel, also *First Nat. Bank v. Oberne, supra,* are directly in point. The facts upon which the first case turned are stated in the opinion of Symonds, J., as follows: "The duty of the agent was to have charge of the store, sell the goods, and from time to time make such purchases of goods as might be necessary in his judgment, subject to the oversight of the directors. In the conduct of the business of the company he assumed to borrow money for them and to pay their debts for goods that had been purchased. Notwithstanding debts of the company to the full amount of the loans have been discharged thereby, the defendants claim that the agent's want of authority relieves them from liability to the lender and affords a defense not only against the notes, but also against the claim to recover under the common counts, as for money had and received." In discussing the general principle before stated, the court quoted with approval from Green's Brice, Ultra Vires, 618, as follows: "There appears to be no substantial reason whatever for not extending the principle here involved to all analogous cases. If liable in one case, why should a corporation not be always liable to refund the property or money of a person, which it has obtained improperly or without consideration, or, if unable to return it, to pay for the benefit obtained thereby." The conclusion reached was that such principle was applicable to the facts of that case, and that plaintiff was entitled to recover the money borrowed, as for money had and received. We perceive no good reason why the principle should not be held to apply here. Defendant had the full benefit of plaintiff's property. To the amount of such property he was relieved from liability to others, which, but for such property, he would have been obliged to pay. A refusal to return the money, with knowledge of the facts, or with notice and sufficient time, with reasonable diligence, to discover the facts, would constitute in law a

ratification of the unauthorized dealing and render him liable.

Notwithstanding the foregoing, plaintiff's motion was properly denied, because mere notice of plaintiff's claim did not constitute knowledge upon which a ratification could be based. It was undoubtedly, coming as it did from plaintiff's attorney, sufficient to put the defendant on inquiry, but he was entitled to a reasonable time to make such inquiry after receiving a notice, and reasonable time to return the money. All such facts were necessary to plaintiff's cause of action upon the ground of ratification. It cannot be said as a matter of law that the time which elapsed between the sending of the letter, June 5, 1895, and the commencement of the action, which was two or three days thereafter, was a reasonable time for defendant to discover the facts and return the money.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.