TWENTIETH CENTURY COMPANY, Appellant, vs. QUILLING, Respondent.

*September 29—October 20, 1908.*

*Appeal: Harmless errors: Disregarding stipulation as to trial: Law of the case: Decision on prior appeal: Special verdict: Form: Waiver of objections: Principal and agent: Ratification: Making of contract: Evidence: Probability: Unreasonableness: Experts: Qualifications: Evidence as to intent: Instructions to jury.*

1. Refusal to try a case without a jury in accordance with a stipulation under which a former trial was had was not harmful error where, after taking the verdict of a jury, the court made and filed full findings of fact in harmony with the verdict, thus adding its decision to that of the jury.
2. An appellate court will not interfere with the action of a trial court in setting aside or disregarding a stipulation in respect

to the conduct of a trial, in the absence of satisfactory affirmative proof that some right of appellant was prejudiced thereby.

3. A decision on a prior appeal that the facts alleged in the answer, if established, would entitle defendant to judgment, is the law of the case upon a subsequent trial and appeal.

4. Where a special verdict covers in some reasonable form all material controverted issues of fact, the fact that some questions therein are immaterial and that others do not, each by itself, cover a distinct issue, is not prejudicial.

5. Where at the trial counsel object to the form of the special verdict in one particular only, they will be deemed to have waived other objection to such form.

6. Where a principal, with full knowledge of all material facts, retains the fruits of an illegal contract made by an agent and attempts to enforce a note given as a part thereof, he thereby, as a matter of law, ratifies the act of the agent.

7. The question being whether the note in suit was given, as plaintiff claimed, for a county right to sell a patented article, or in pursuance of an illegal scheme of the parties to defraud other persons by selling to them nominal and practically worthless territorial rights to sell such article, evidence offered by defendant that there were at the time other devices similar to the one in question with which the latter would come in competition, so that purchasers of selling rights would not have the advantages of a monopoly, was admissible, whether such other devices were patented or not, as tending to show that such a contract as plaintiff claimed was made was unreasonable and the making thereof improbable.

8. A failure to show what were the relative merits of such devices went to the weight of such evidence, not to its competency.

9. A witness who testified that he personally knew of several devices designed to accomplish the same result as the patented article in question, had observed them in use for quite a period of time, and had kept them for sale in his hardware business and sold them when traveling, was competent to testify as to the similarity of the other devices to the one in question.

10. A witness who had had several years' experience as a wagon and carriage maker and in such business had seen five or six pole and thill coupling devices of the nature of the one in question and had observed some or all of them in use, was competent to testify as to the practicality of one of such devices and to testify as to what the devices shown him were designed for.

11. Direct evidence of a party's intent in making a contract is admissible where such intent is material and is not manifest from the contract itself; and when the intent is so manifest the ad-

Twentieth Century Co. v. Quilling, 136 Wis. 481.

mission of direct evidence in harmony therewith is not prejudicial.

12. Where a witness was permitted to testify fully as to what was said and done between a principal and his agent respecting a certain matter, it was not error to refuse to permit him to state his conclusion as to the limitation of the agent's authority in the matter.

13. Where the principal has adopted and ratified an act of his agent, the exclusion of evidence as to limitations of the agent's authority to do such act is not prejudicial.

14. Rulings of the trial court as to the admission or exclusion of evidence should not be assigned as error unless they relate to something of a substantial nature and may probably have affected the result prejudicially to the party so assigning them.

15. A mere explanatory sentence in the charge or in an instruction to the jury should not be separated from its context and error assigned; but the charge or instruction should be regarded as a whole and as the jury must have understood it.

16. Where a special verdict is taken, requested instructions which are not directed to any particular question may properly be refused.

17. Requested instructions on the subject of the ratification of an agent's act were properly refused where the evidence showed ratification as a matter of law.

18. Rejection of requested instructions, to the effect that the intent of one party in making a contract is immaterial without a similar intent on the part of the other, was not error, where the question of the special verdict covering that issue and the instructions given with respect thereto were such that the jury could not find thereon favorably to respondent without finding that there was a meeting of the minds of the parties as to the matter.

APPEAL from a judgment of the circuit court for Dunn county: E. W. HELMS, Circuit Judge. *Affirmed.*

Action to recover on a promissory note. The defense was as tendered in the proposed amended answer, fully set forth in the report on the first appeal to this court. 130 Wis. 318, 110 N. W. 174. For a full statement of the issues presented reference is here made to such report, it being understood that such proposed amended answer was the answer in fact at the second trial, resulting in the judgment appealed from.

The first trial was by the court pursuant to a stipulation that the cause should be placed upon the court calendar and tried at the convenience of the court upon notice by it to the attorneys for the respective parties.

The judge who presided at the first trial did not preside at the second. On the latter occasion, the cause being on the jury calendar and having been reached for trial, plaintiff's counsel moved on the aforesaid stipulation for a transfer of the cause to the court calendar and a trial without a jury. The motion was denied, due exception to the ruling being preserved. Evidence was introduced bearing on the questions passed upon by the jury. A special verdict was rendered containing these findings in substance: The purpose of both parties to the contract was to defraud others. The real arrangement between them was a mutual scheme to make money by selling nominal territorial rights to others, each of whom should, by the sale contract, become a party to the scheme, agreeing to sell similar rights to others, each of whom should likewise sell to still others, and so on to the extent that purchasers could be found who would become like parties. Such arrangement was the real consideration for the note in suit. Neither party supposed the right to sell the device in Gates county was of any real commercial value, or that defendant would make any effort in that regard. Such right was not of any real commercial value. The written contract did not include the entire agreement. It was agreed when the contract was made and note given that the right to sell the patented article in Gates county during the life of the patent was of no value. The agent who represented the defendant in the transaction was authorized to make the agreement. Such agent had authority additional to that indicated in the writing between him and plaintiff.

After the rendition of the verdict a motion was made on behalf of plaintiff for judgment thereon, and a motion was made on behalf of defendant to change the answers which

were adverse to it to answers in its favor and for judgment
on the corrected verdict for the amount claimed in the com-
plaint. Subsequently the court made and filed full findings
of fact, substantially the same as would have been required
in case of the trial having been had without a jury, denied
plaintiff's motion, and granted that of defendant. Judg-
ment was rendered accordingly - dismissing the cause with
costs.

*Daniel H. Grady,* for the appellant.

For the respondent there was a brief by *Bundy & Varnum,*
and oral argument by *R. E. Bundy.*

MARSHALL, J. Whether, technically, the court erred in
refusing to try the case without a jury, and we do not in-
tend to suggest that it did so err, such error was not harm-
ful. The defendant was entitled as matter of right to a jury
trial unless he waived it. The court, seemingly uncertain as
to whether he ruled right or not in denying the motion to try
the case in accordance with the stipulation, after taking the
verdict made full findings of fact, adding its decision to that
of the jury, the two being in harmony. In such circum-
stances we are unable to see that plaintiff was in any wise
prejudiced by the ruling complained of. The general trend
of authority is that an appellate court will not interfere with
the action of a trial court in setting aside or disregarding a
stipulation in respect to the conduct of a trial, in the absence
of satisfactory affirmative proof that some right of appellant
was prejudiced thereby. 20 Ency. Pl. & Pr. 670, and cases
cited. That is the effect of *Brown v. Cohn,* 88 Wis. 627, 60
N. W. 826.

The law of this case, respecting whether respondent was
entitled to judgment in the event of his establishing without
harmful error in the course of the trial the facts alleged in
the answer, was settled upon the first appeal. Some ques-
tions in that field are presented in the brief of appellant's

counsel, but we shall not refer thereto otherwise than by this recognition of them and the well-known rule that they are settled by the former decision. *Case v. Hoffman,* 100 Wis. 314, 72 N. W. 390, 74 N. W. 220, 75 N. W. 945; *Collins v. Janesville,* 111 Wis. 348, 87 N. W. 241, 1087; *Zimmer v. Fox River Valley E. R. Co.* 123 Wis. 643, 645, 101 N. W. 1099; *Horn v. La Crosse Box Co.* 131 Wis. 384, 388, 111 N. W. 522.

While some fault is found with the special verdict no complaint goes to the extent of challenging its sufficiency as not covering all controverted issues of fact. Such being the case, the fact, if there be such as claimed, that some questions included in the verdict are immaterial and others do not, each by itself, cover a distinct issue raised by the pleadings, is nonprejudicial. It were better to always prepare the special verdict in strict conformity to the statute as the court has construed it. But if in any case the verdict in some reasonable form covers all material facts put in issue by the pleadings and controverted in the evidence, so that each question and the answer thereto informs the court as to the truth of the controversy involved therein, especially in case of there being no objection to the form till after the jury are discharged, another rule of the statutes—the one commanding a disregard of nonprejudicial errors—must prevail. No objection to the form of the verdict here was raised by appellant's counsel upon the trial except one not mentioned upon this appeal. The fact that counsel examined the form prepared by the court and made the one objection thereto directed to one question, keeping silent in respect to it otherwise, may well have been understood by the court as consenting to such form, except as thus criticised. Nothing further seems necessary on this branch of the case.

Much complaint is made that the verdict, at some material points, is not supported by any credible evidence. The record has been carefully studied in that respect. We shall

not follow in this opinion the intricacies of counsel's argument as to what is essential to a contract embodying the fatal elements set forth in the answer. Many questions discussed in counsel's brief in respect to such matters, bearing on the greater question that the verdict is not supported by the evidence, are beside the case, as we view it. Did the plaintiff and defendant make the contract alleged in the answer? That is the vital question, and it was resolved by the jury in respondent's favor by a distinct finding on the subject.

True, appellant acted in the matter through an agent, but there is no question of ratification necessarily involved, since the jury found that the agent had original authority to act as he did. Moreover, we agree with the contention of respondent's counsel that the act of appellant in keeping the fruits of the alleged and found illegal transaction and pursuing respondent to realize thereon after being fully informed of the nature thereof, as it seems was the case, was a ratification of the agent's conduct as a matter of law. *McDermott v. Jackson,* 97 Wis. 64, 76, 72 N. W. 375; *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 90 N. W. 476. In the last case cited it was stated as a principle too well understood to justify discussing the same in a legal opinion, that a person cannot have the benefit of a transaction and repudiate the responsibilities thereof. If he insists upon the one he subjects himself to the other as regards civil remedies. Standard works on the law of principal and agent uniformly so state the rule to be, as witness the following:

"The principal cannot avail himself of the benefits of the act of a person assuming to represent him in a transaction and repudiate its obligations. Having, with full knowledge of all the material facts, ratified, either expressly or impliedly, the act assumed to be done in his behalf, he thenceforward stands responsible for the whole of it to the full extent to which the agent assumed to act, and he must abide by it whether the act be a contract or a tort and whether it results to his advantage or detriment." Mechem, Agency, § 167.

Without further discussion on this branch of the case we will close by stating this as the conclusion to which we have arrived: There is ample evidence tending to establish every material fact covered by the verdict. To incumber this opinion by a recital of the evidence in detail, or even by stating the same in a general way with an analysis thereof, pointing out how the jury might reasonably have viewed the same, would serve no purpose except to support the statement that the record has been carefully examined as a basis for the conclusion. We must assume that no such support is necessary.

Many complaints are made of rulings on evidence. We will refer in detail to those which we regard as most significant.

Evidence was permitted on the part of defendant as to there being devices similar in character to the one in question with which the latter, at the time the contract was made, would, upon its being placed on the market, come in competition. It is suggested that the evidence should not have been allowed in the absence of proof that such other devices were patented. We are unable to see why that could make any difference. The materiality of the evidence was in its tendency to prove the circumstance that the particular device was but one of several designed for the same purpose; that being regarded as throwing some light on whether the contract actually made was as claimed by respondent. In that respect the evidence was competent. It is said that the evidence was not limited to the time and place involved in the contract. As we read the evidence it clearly related to the time of the contract and theretofore and was general, including the place where the contract was made. The material thing, as indicated, was to show that in any effort to sell the patented device one would not have the advantages of a monopoly and that under such circumstances and others shown by the evidence such a contract as appellant claimed

was made would be unreasonable and, therefore, the making thereof was improbable.

It is further suggested that in no case where a witness testified on the subject of there being other appliances on the market was it shown that he was competent to testify as to relative merits. No place is pointed out by counsel where any witness testified in relation to relative merits. Counsel for respondent seems to have been content with proving the evidentiary circumstance that the particular device was but one of many. So far as the evidence was weak in not showing relative merits it went to the weight of the evidence, not to the competency thereof.

Particular complaint is made because the court permitted one Jackson to testify on the subject of the existence of other appliances than the one in question without, as alleged, having shown himself to be experienced in respect to the matter. As we read the evidence counsel is in error. It shows that the witness personally knew of several devices designed to accomplish the same result as the particular one. He had observed them in use for quite a period of time and kept them for sale in his business as a hardware dealer and sold them when traveling as a sales agent.

Error is assigned because the court permitted a witness to testify that a particular device shown him designed for the same purpose as the one in question was practical. It is argued that the witness was not shown to have any special knowledge on the subject. The record clearly indicates to us otherwise. The witness seems to have had several years' experience as a wagon and carriage maker, and dealer, and in such business to have, prior to the making of the contract, seen some five or six devices of the nature of the one in question and observed some or all of them in use. In short, the witness's competency to a high degree was shown. It is argued that it was improper for the witness to testify as to the design of devices shown him; that such was opinion evidence

and invaded the province of the jury.  No reason is per-
ceived why it was not perfectly proper for such an expe-
rienced witness to merely testify to what appliances exhib-
ited to him were designed for.  If it was a matter open to
any one of common knowledge the evidence was harmless.
If it was within the field of expert evidence the witness was
abundantly competent.  At this point it is again suggested
that the witness's evidence as to the use of thill couplings
was not limited to the time and place of the contract.  We
find that it was very carefully so limited as to time and re-
lated to the territory in which the contract was made.

Further complaint is made because respondent was per-
mitted to give direct evidence as to his purpose in making
the contract.  It is suggested that his intent by itself was
immaterial, the mutual intent only being important; that an
undisclosed intent in any event cannot be testified to for the
purpose of contradicting or nullifying express and definite
words of a contract, and that the intent was only provable by
the acts and language of the parties.  It is a sufficient an-
swer to counsel's entire argument at this point that the evi-
dence was nonprejudicial because the intent in making the
contract, if the character of the agreement was as he claimed,
was manifest.  Moreover, the admission of the evidence was
not upon the theory, nor did it give rise reasonably to a sus-
picion, that the intent of the defendant, by itself, was ma-
terial, nor did the evidence tend to contradict, but rather it
was in perfect harmony with the words of, the contract as
respondent claimed it was made.  Again, counsel is in error
in the position that direct evidence of intent, when that ele-
ment is material, is not permissible.  It is proper in many
situations.  *Anderson v. Wehe,* 62 Wis. 401, 22 N. W. 584;
*Commercial Bank v. Firemen's Ins. Co.* 87 Wis. 297, 303,
304, 58 N. W. 391; *Fischer v. State,* 101 Wis. 23, 26, 76 N.
W. 594.  When the act in question is ambiguous as regards
the intent, direct evidence is always proper.  When the in-

tent is manifest from the contract and in harmony with the
intent testified to, the evidence is immaterial, but harmless.
When the intent is so manifest it is error to admit direct evi-
dence impeaching it.   The subject is summarized in Jones,
Ev. at sec. 170 (167), in harmony with the decisions of this
and other courts substantially thus:

"It is the prevailing rule, sustained by the great weight of
authority, that . . . when the motives of the witness in per-
forming a particular act become a material issue in a cause
or reflect important light upon such issue, he may himself
be sworn in regard to it, . . . though testimony of this char-
acter should not be received to change the import of a con-
tract, as to the terms of which there is no dispute, or to vary
a written instrument."

Reliance is placed on the fact that the court permitted evi-
dence of transactions subsequent to the making of the con-
tract.   Whether, if that were true, it was proper or not un-
der the circumstances need not be considered, since we are
unable to find that any such evidence was given.   As we
view the matter, counsel is plainly in error as to the time
when the contract was finally concluded and the complaint
at this point is predicated on such error.

The court erred, it is said, in rejecting proof as to the limi-
tation of the authority of the agent who acted in appellant's
behalf in making the contract.   The record discloses that the
witness whose testimony is referred to, while not permitted
to give evidence of his conclusion, was allowed to testify
fully respecting what was said and done between the agent
and the principal respecting the matter.   Moreover, rulings
on that line, whether correct or not, were nonprejudicial,
since the case shows that appellant adopted the act of the
agent as before indicated.

There are several more rulings complained of excluding
or admitting evidence, but they are not considered of suffi-
cient importance to warrant further detail mention thereof.

It may be well to observe that rulings of the character just discussed, unless they relate to something of a substantial nature and are clearly wrong and may probably have affected the result prejudicially to the adverse party, fall under the statutory rule respecting disturbance of a final adjudication because of nonprejudicial matter. Therefore the presentation of a multitude of such rulings for review upon appeal, without careful discrimination between those which may be worthy of consideration and those which are not, is far from being advisable. It takes up the time of the court and counsel which could profitably be devoted to matters which are vital. Instances are few in number where such rulings have been found to be of sufficient importance to have probably affected the result.

It is claimed the court instructed the jury that there was in fact an oral agreement made between the parties contemporaneous with and in addition to the written contract, thereby invading their province respecting the vital issue in the case. That claim is grounded on what appears to be an erroneous report of the charge; a mere explanatory sentence being reported as an independent expression. We have no doubt from the language objected to and its context that the whole was read to the jury in such a way as to unmistakably convey to them a single thought, leaving the controversy involved to them for determination. The charge as we apprehend it was given, and as seems manifest, is as follows:

"The defendant here claims that there was an oral understanding and agreement outside the written contract, and that is for you to determine by your answer to the question whether that is a fact or not; I mean to say, that there was an oral understanding or agreement made at the same time and contemporaneous with the written agreement. It is that understanding or agreement that I refer to that the defendant contends was made at the same time with the written contract, and by your answer to this question you are called upon to determine whether or not that is a fact."

The clause commencing with the words "I mean to say," plainly refers to what preceded by way of explanation, for the purpose of impressing upon the minds of the jurors more definitely the real issue to be determined.   That is rendered doubly plain by the sentence which follows.   By separating the intervening clause, as counsel does, from the words which precede it, plain error is exhibited, but the clause is thus made so inconsistent with the language which follows it as to make the claim that it was used as counsel contends and as it was punctuated by the reporter, quite unreasonable.   The jury must have gotten this idea and none other: You are to determine by your answer to this question whether that is the fact or not, viz.: that there was an oral understanding or agreement made at the time and contemporaneous with the written agreement.

Some requests to instruct the jury made by counsel for appellant on the subject of ratification were rejected.   In some instances the requests were rejected properly because they were not directed to any particular question.   All were properly rejected because the evidence showed ratification as a matter of law, and in any event the rejection was harmless because the jury found as matter of fact on evidence warranting it that the contract was made between plaintiff and defendant at the outset as testified to by the former.

Complaint is made because the court rejected an instruction to the effect that the intent of one party in making the contract is immaterial without a similar intent on the part of the other and that the affirmative of question 9, covering the issue as to what the contract in fact was, depended on whether the jury concluded from a preponderance of the evidence that both parties intended to make such an agreement as that contemplated by the question.   The difficulty at this point is that the question did not deal with the subject of intent as a fact, but with the subject of what the contract was which the parties made as disclosed by the writing and their

verbal communications. If they said and did what respond-
ent claims, then they made the contract alleged. To hold
that they did not would be to contradict unmistakable lan-
guage and acts. So the intent as an independent substantive
fact was immaterial, though as before indicated, so far as it
was testified to directly, the evidence was, if immaterial, not
harmful. The question and instructions given in respect
thereto made it impossible for the jury to pass upon the con-
troversy favorably to respondent without finding that there
was a meeting of minds in respect to the matter.

A further suggestion is made that the court improperly
permitted the jury in answering the question last above men-
tioned to find that there was an oral contract made subse-
quent to the making of the written contract and the giving of
the note sued on. Here again counsel points to a sentence
apart from its context which is clearly explanatory of what
precedes it. That is manifestly an improper way to test a
court's instructions. By such methods one might easily read
error out of language which is, when properly considered, ab-
solutely faultless. When the instruction here is considered
as a whole, the particular part unmistakably refers to the
claim that the written contract was but part execution of an
entire oral one made at the time the writing was executed.
We may well repeat what has often been said before, that a
charge must be regarded as a whole and as the jury must
have understood it and not divided up into its separate sen-
tences and clauses. *Bartell v. State,* 106 Wis. 342, 82 N.
W. 142; *Pelton v. Spider Lake S. & L. Co.* 132 Wis. 219,
235, 112 N. W. 29.

Some other matters are presented by counsel for appellant
but none which seem to call for special treatment. All com-
plaints not here mentioned in detail have been considered
and passed upon, resulting in a conclusion that the judgment
must be affirmed.

*By the Court.*—So ordered.