TRIPP, Respondent, vs. FOSTER, imp., Appellant.

*February 26—April 9, 1914.*

*Principal and agent: Sale of pledged stock by agent of pledgor: Fraud: Ratification: Liability of pledgee.*

Defendant, the holder of a note given by a corporation, held stock of the corporation as collateral security. An agent of the corporation, who did not act or assume to act as agent of defendant, sold a· part of said stock to the plaintiff by means of fraudulent representations as to its value. Defendant took no part in the sale and had no knowledge of the fraud; but on receiving from the corporation. the proceeds of the sale he assigned and surrendered the shares so sold. *Held*, that he did not thereby ratify the acts of the agent of the corporation so as to become liable either to return the consideration paid by the· purchaser or to answer in damages for the fraud. MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

This action was brought to recover on two alleged causes of action, $1,000 on the first and $500 on the second, alleged to have been procured from the plaintiffs by fraud in the sale of a portion of the capital stock of the Bates-Odenbrett Automobile Company, a corporation. The sale was made by one Bates, and it is claimed that he was acting as the agent of defendant *Foster* in making such sale.

*Foster* answered denying specifically that Bates was his agent or had any authority to act for him, that he received any benefits from the acts of Bates, that he was the owner of

any of the stock in the alleged corporation, and denying generally other allegations of the complaint.

The jury returned the following verdict:

"(1) Did Mr. Bates, to induce *Mr. Tripp* to purchase the stock, represent to him, in substance, that the company was then doing a successful and profitable business? *A.* Yes.

"(2) Was such representation false? *A.* Yes.

"(3) If false, did Mr. Bates know it to be false? *A.* Yes.

"(4) If false, then ought Mr. Bates to have known it was false? *A.* Yes.

"(5) Did *Mr. Tripp* rely on such representation? *A.* Yes.

"(6) Was *Mr. Tripp* induced by such representation to purchase the stock? *A.* Yes.

"(7) Did Mr. Bates, to induce *Mr. Tripp* to purchase the stock, represent to him, in substance, that the company had paid fifteen to twenty per cent. dividends annually since its organization? *A.* Yes.

"(8) Did *Mr. Tripp* rely on such representation? *A.* Yes.

"(9) Was *Mr. Tripp* induced by such representation to purchase the stock? *A.* Yes.

"(10) Did Mr. Bates, to induce *Mr. Tripp* to purchase the stock, point out to him the automobiles in the salesroom and say to him that they all belonged to the company and were all paid for? *A.* Yes.

"(11) Was such representation false to any material degree? *A.* Yes.

"(12) Did *Mr. Tripp* rely on such representation? *A.* Yes.

"(13) Was *Mr. Tripp* induced by such representation to take the stock? *A.* Yes.

"(14) What was the stock worth at the time of the purchase? *A.* Nothing.

"(15) What would the stock have been worth had such of these representations been true as you find were made and were false? *A.* One thousand ($1,000) dollars."

The defendant *Foster* insists that a verdict should have been directed, or a nonsuit granted as to him, or judgment should have been rendered in his favor notwithstanding the verdict.

Judgment was entered against the defendants for $1,138

·damages on the first cause of action and costs, from which judgment the defendant *Foster* appealed to this court.

For the appellant there was a brief by *T. L. Doyle,* attorney, and *Marshutz & Hoffman,* of counsel, and oral argument by *Mr. Doyle* and *Mr. J. H. Marshutz.*

*Andrew Gilbertson,* for the respondent.

KERWIN, J.    It is established by the evidence that the defendant *Foster* held the stock in question as collateral security to a note of the "Bates-Odenbrett Automobile Company," of which one Dr. E. W. Timm was president and the defendant Bates was secretary and treasurer from 1905 to 1912, and severed his official relations in January, 1912. ·On the back of the notes of said corporation was the indorsement of said Timm and Bates.    On receipt of the collateral ·stock the defendant *Foster* executed the following:

"I hereby agree on the payment of a certain sum of five thousand dollars ($5,000) together with the interest as specified by one certain note of five thousand dollars ($5,000) due ·October first, 1911, to deliver to the Bates-Odenbrett Auto ·Company stock certificate number eight (8).

"J. W. FOSTER."

Bates made the representations to plaintiff about a month before plaintiff bought the stock.    The $1,000 received by Bates from plaintiff went to the Bates-Odenbrett Automobile ·Company at Milwaukee, and later in May, 1911, the Bates-·Odenbrett Automobile Company sent a check for $1,000 to the defendant *Foster* to apply on the $5,000 note, and sent four notes of $1,000 each, which with the $1,000 cash took ·up the $5,000 note.

It is established by the evidence and so found by the learned trial judge in his opinion that defendant *Foster* had no knowledge of any representations made by defendant Bates; that *Foster* did not own the stock, but merely held it ·as collateral security and had it in his possession at the time ·of sale, and upon being informed by Bates of its sale executed

an assignment and sent it to Bates, who filled in the name of
the purchaser and delivered it and received $1,000, which
was paid to defendant *Foster* and credited upon the debt
which the stock in part secured.

Upon the facts above stated and others found by the jury
the court below held that the defendant *Foster* was liable for
the fraud of Bates. *Foster* was not the owner of the stock.
He merely held it in pledge as security for the debt of the
Automobile Company to him. Bates sold the stock as the
agent of the Automobile Company, which was the owner sub-
ject to the pledge. The Automobile Company redeemed the
pledge and got possession of the stock by paying its value, or
supposed value, to *Foster,* which was credited upon the debt.
What the Automobile Company did with the stock after it
was turned over to it through Bates was a matter of no con-
cern to *Foster*.

But the court below seems to have rested *Foster's* liability
on the question of agency, namely, that by receipt of the
$1,000 *Foster* ratified the sale and made Bates his agent.
But the record shows that Bates was not the agent of *Foster*
for any purpose, either by appointment or by ratification.
It is clear from the undisputed evidence that *Foster* never
appointed Bates as his agent to sell the stock, and he could
not be bound by ratification of Bates's fraud, because he had
no knowledge of it and was in no way implicated in it or
connected with the sale made by Bates.

We think it clear upon principle and authority that Bates
was not the agent of *Foster* for any purpose. *Clark v. Dill-
man,* 108 Mich. 625, 66 N. W. 570; *Deering v. Starr,* 118
N. Y. 665, 23 N. E. 125; 31 Cyc. 1632, 1644; *Emmons
v. Dowe,* 2 Wis. 322; *McGoldrick v. Willits,* 52 N. Y. 612;
*First Nat. Bank v. Bentley,* 27 Minn. 87, 6 N. W. 422;
*Gifford v. Landrine,* 37 N. J. Eq. 127.

The theory of the court below obviously was that when
*Foster* received the $1,000 he ratified the acts of Bates re-

specting the fraud in the sale of the stock. But *Foster* could not, by merely accepting the $1,000 due him from a third person, make the agent of such third person his agent or ratify an agency which was never attempted and which never existed, nor the fraudulent acts of one who was not his agent, as to false representations of which he had no knowledge. But *Foster* received the $1,000 from his debtor, the corporation, and not from Bates, although the latter may have been the agent of the corporation in paying to *Foster* the money due him. The fact that it was a part payment, accompanied with a request that the security be split up and some of the shares retained by *Foster* as security for the balance due, cannot change the ordinary effect of the payment by a debtor to his creditor. The latter is not bound to inquire how his debtor got the money so long as it was at the time of payment the money of the debtor. 31 Cyc. 1251. The plain situation is that *Foster* surrendered the stock held as collateral, receiving the agreed value, which was credited on the debt of the owner of the stock, and had no connection with the fraud committed by Bates, and had no knowledge of it when he surrendered the stock. Under such circumstances no case is made against the defendant *Foster*. Other questions discussed by counsel for appellant need not be treated.

*By the Court.*—The judgment is reversed, and the cause remanded with instructions to enter judgment for the defendant *Foster* dismissing the complaint as to him.

The following opinion was filed April 16, 1914:

MARSHALL, J. (*dissenting*). I dissent from the decision in this case, and more particularly, from the reasoning upon which it is based. I apprehend I am not alone in regard to the latter.

To give a clearer view of the facts than the court's statement affords I will give them as they appear to me. Defendant held $5,000, par value, of the corporate stock of the

Automobile Company of which Bates was manager. It was important for the company; but more particularly for appellant, to realize on the stock. It was for sale for the purpose of paying a debt to appellant who held the stock as pledgee but possessed the legal title thereto. Bates, as manager of the company, and without the knowledge of appellant, assumed authority to sell the stock and did so, depending upon appellant to ratify the sale by turning over the certificate, properly indorsed, so the title could be vested in respondent, the vendee, in consummation of the sale. Such consummation took place by means of fraudulent representation made by Bates. He did not pretend to own the stock or that it belonged to his company. He stated that it was in the hands of a third party from whom he could get it so as to complete the sale. By means of the fraud, respondent's money was obtained and paid over to the company to be rendered to appellant, as owner of the stock, after consummation of the sale. Appellant was notified of the sale agreement and requested to indorse and turn over the certificate so as to enable the company to make delivery upon such agreement. He complied, and later received the consideration from the company which respondent had paid to it. Up to this time appellant was ignorant of the means employed to effect the sale. Later that was brought to his attention and a return of the consideration parted with by respondent demanded. With full knowledge of the facts restitution was refused. Then this action was brought.

Now why does not the principle, with which I suppose all are familiar, apply in favor of respondent? The trial court so decided, reasoning from numerous decisions of this court, as we shall see. Here is the rule as commonly stated:

"A person is liable for the fraudulent act of his agent in the conduct of his business whether he authorized such acts originally or adopted them by taking the benefit of the act with knowledge of the facts or retained such benefit with such knowledge, or was enriched by such act without original

or subsequent knowledge of the wrong committed in his interest."

"A person cannot retain the avails of an unauthorized contract, made for his benefit by another assuming to act as his agent, and repudiate the responsibilities of such contract, and any attempt to do so, with full knowledge of the facts, constitutes a ratification of the unauthorized act, and creates a liability on the part of such person to the same extent as if such contract were originally authorized." *McDermott v. Jackson,* 97 Wis. 64, 76, 72 N. W. 375.

One cannot have the benefit of a transaction and repudiate its responsibilities. Ratification of the assumption of authority as to the principal thing by taking the benefit of the transaction and retaining the same with knowledge of the facts ratifies not only such principal thing but the manner of acquiring it. If the taker insists upon vitality of the major element he subjects himself to the subsidiary features as regards civil remedies. *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 517, 90 N. W. 476; *Glassner v. Johnston,* 133 Wis. 485, 493, 113 N. W. 977; *Stelting v. Bank of Sparta,* 136 Wis. 369, 371, 117 N. W. 798; *Twentieth Century Co. v. Quilling,* 136 Wis. 481, 487, 117 N. W. 1007. Now how does that apply to the facts here?

Appellant, as it must be observed, held the stock to all intents and purposes as owner. No one could sell it without his permission. The company, through Bates, necessarily assumed to have such permission and appellant acquiesced in all it did, from first to last, though not having given any express authority. Let it be conceded, that Bates acted for the company in a measure, yet it is undisputed that he also acted for respondent, actually or by assumption of authority and, certainly, in his interest. What difference does it make that the company received the money and then paid it to appellant? That is commonly the case where a person, pretending to be the agent, or to act in the interest of another, without disclosing his representative capacity, receives the

consideration from a third party and turns it over to such other who may be entirely ignorant of the matter until tender of such consideration. The receipt of it relates back to the assumption of authority and gives original validity to it, only waiting upon refusal to disaffirm and restore the former situation in case of the contract having been fraudulently made, upon being fully informed of the facts in that regard.

The whole transaction here, even if, ostensibly, for the company, was, evidently, chiefly for appellant. Certainly it, through Bates, acted for him in enabling him to realize on his collateral. It was not specially benefited by the transaction for it only exchanged a liability on the note held by appellant for one on the stock. Appellant was the only one really enriched in such transaction. He was favored to the impoverishment of respondent by just so much as the latter paid and which eventually reached the pocket of appellant. Why do not Bates, the company, and appellant stand on the same platform as the trial court held?

The court says, substantially, that Bates was not the agent of *Foster* either by appointment or ratification. There was no agency because *Foster* never appointed any agent in the matter. He could not be bound by what he had no knowledge of. That seems to have been said without appreciating the elementary principles before stated. Agency by ratification of an unauthorized act, by keeping the fruits thereof after knowing of the facts, is about as well known as anything in the law of agency. Why say there was no agency because no appointment nor ratification? Was it overlooked that if a person, after being informed of the facts as to another having perpetrated a fraud in his interest upon a third person, retains the fruits thereof, he thereby ratifies the act of such other and becomes liable for the wrong though entirely innocent of any original sin?

*McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375, covers the whole subject involved here. It followed *Morse v. Ryan,*

26 Wis. 356, 361, where the court substantially said: If a person accepts the benefit of a contract made by one professing to have authority to act for him, he thereby ratifies the means by which it was obtained and such ratification is equivalent to previous authorization. He cannot object to evidence of fraudulent representations made in procuring the same, on the ground that the actor was not his agent, or that the representations were not authorized. That was followed in *Burke v. M., L. S. & W. R. Co.* 83 Wis. 410, 415, 53 N. W. 692, and again in *Garlick v. Morley,* 147 Wis. 397, 399, 132 N. W. 601, where it was said: "Ratification may appear circumstantially as well as expressly. It may be presumed by conduct such as by carrying out the contract and accepting the benefits in like manner as if the person assuming to be authorized to represent him had authority in fact."

Thus, it will be seen, that this court has over and over again proclaimed and applied the principle which the trial court supposed ruled this case. Why was it wrong? The opinion of the court is silent on that. It does not refer to the stated principle or any principle or any authority which at all fits the case, so far as I can see. It is said there was no agency because no original authorization or subsequent ratification, quite ignoring, seemingly, the existence of the facts so often held sufficient to work ratification in law with all the consequences of original authority.

The following opinion was filed April 18, 1914:

Winslow, C. J. (*concurring*). The principle that one cannot, with knowledge of the facts, retain the avails of an unauthorized contract made for him by another assuming to act as his agent and repudiate the responsibilities of the contract, is so well understood that it needs no restatement. This constitutes agency by ratification, and it is just as effective to charge the principal with responsibility for the acts of

the agent in the transaction as original authority. *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375; *Twentieth Century Co. v. Quilling,* 136 Wis. 481, 117 N. W. 1007. I do not understand that there is any intention to depart from that principle in the decision of the present case. The trial court came to the conclusion that. Bates assumed to act for *Foster* in the sale of the stock, and that when *Foster,* with knowledge of Bates's alleged fraud, retained the $1,000 which the Bates-Odenbrett Company afterwards sent him, he ratified the entire transaction and became liable for the fraud perpetrated by Bates in selling the stock to *Tripp.* If the trial court's premise be right the conclusion must also be right, but I understand that the decision of the court in this case is based on the proposition that the premise is not right, *i. e.* Bates was not in fact acting for *Foster,* nor did he assume to be so acting. If it were to be held that *Foster* is liable for Bates's misrepresentations in the present case, we think it would be a serious shock to the commercial world and tend to unsettle a very well recognized business custom. Such a holding would mean that whenever a creditor takes collateral security from a debtor and consents that the debtor may dispose of the collateral and apply the proceeds on the debt, the creditor, though taking no part in the transaction and really indifferent as to its success, may be compelled to return the consideration or respond in damages for his debtor's fraud. Probably there is and always will be a very large amount of collateral held under just such arrangements. It cannot be justly said in such a case that in making sale of the collateral the debtor or his agent is acting for the creditor. Under ordinary circumstances the creditor is indifferent in the matter; he holds the property as bailee for a particular purpose. He is not interested in its sale, but simply in the payment of the debt. If the debtor can obtain the money to make the payment by selling the collateral he is willing to take the money; if the debtor can obtain the money

to pay the debt in other ways, the creditor is equally willing to take it. Of course, the creditor may himself take an active part in the sale of the collateral, and in this case a different proposition would arise; but where, as in the present case, the creditor simply holds the collateral as security, taking no part whatever in the sale thereof, except to transfer it when requested and to receive from his debtor payment of the debt, we think it cannot be justly or fairly said that the person making the sale has assumed to act or has in fact acted as the creditor's agent in the transaction. So understood, this decision does not in any way discredit the well established legal results of the ratification of an unauthorized contract by retention of the avails thereof.

BARNES, J. I concur in the foregoing.

VINJE, J. I concur in the foregoing opinion of Chief Justice WINSLOW.