WALDHEIM & COMPANY, INC., Appellant, vs. MITCHELL STREET STATE BANK, Respondent.

*February 4—March 3, 1936.*

For the appellant there was a brief by *Bloodgood, Stebbins & Bloodgood,* attorneys, and *Albert K. Stebbins* and *G. Kenneth Crowell* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins.*

For the respondent there was a brief by *Fawsett & Shea,* attorneys, and *C. F. Mikkelson* of counsel, all of Milwaukee, and oral argument by *Mr. Mikkelson.*

WICKHEM, J. Plaintiff owned and operated three retail furniture stores in the city of Milwaukee. One of these stores was located on Mitchell street near the defendant bank in which plaintiff carried a checking account. When the account was opened, a signature card was signed by three officers of plaintiff. One portion of this card read as follows:

"To the Mitchell Street State Bank:

"Below please find authorized signatures which you will recognize in the payment of funds or the transaction of other business on our account. We have read the agreement on the reverse of this card and hereby subscribe thereto.

"STANLEY V. WALDHEIM,
"B. BREITUNG,
"L. E. ROSENHEIM."

Deposits of the daily receipts in plaintiff's Mitchell street branch were made either by the cashier or bookkeeper of this branch, and had placed thereon with a rubber stamp an un-

restricted and general indorsement. As funds accumulated in this account, they were transferred by check to the bank at which plaintiff carried its principal account. These checks were signed by two of the persons named in the signature card. Occasionally, checks were sent to the Mitchell street branch signed by officers of the plaintiff, and were indorsed with a rubber stamp and deposited for the purpose of replenishing the petty cash account of the Mitchell street branch. The testimony is in conflict as to whether checks payable to third persons and indorsed with a rubber stamp were ever cashed at the bank, but concededly such instances were rare.

John Schutten owed plaintiff $142.90 on a merchandise account. On August 5, 1930, he came to the Mitchell street branch and exhibited to the cashier a check in the sum of $1,500 made payable to the order of Louise Schutten as guardian of John Schutten, incompetent, and New Amsterdam Casualty Company. The cashier informed Schutten that the store did not have enough money on hand to cash such a large check, and suggested that he get the money at defendant bank and then pay the bill. Schutten stated that he was not known at the bank and would need to be identified. The cashier then placed the plaintiff's rubber stamp indorsement on the check and asked one Streeter, plaintiff's credit manager, to accompany Schutten to the bank and identify him. This was done without the knowledge or direction of the store manager or any officer of the plaintiff. Schutten and Streeter went to the bank, and the paying teller cashed the check after being told by Streeter that Schutten wanted the money to pay a bill at the store. The money was handed to Streeter, who counted it and turned it over to Schutten. The latter then returned to plaintiff's store and paid his account in full. None of the parties, including the teller, had noticed that while the check was indorsed by Louise Schutten, the guardian, it had not been indorsed by the New Am-

sterdam Casualty Company. For this reason, the check was protested by the drawee bank and returned to the defendant. The check was turned over to plaintiff by defendant with the understanding that plaintiff would endeavor to obtain the indorsement of the New Amsterdam Casualty Company. This effort was unsuccessful. On September 15, 1930, which was about two weeks after defendant had returned the check to plaintiff, defendant notified plaintiff that its account was being charged on that day with the amount of the check.

On September 18, 1930, plaintiff drew a check on defendant bank for an amount which included the $1,500 check. This check was promptly returned with the notation "N. S. F." On January 23, 1932, plaintiff made demand upon defendant for the amount theretofore deducted from plaintiff's account. Plaintiff thereafter petitioned the county court for reimbursement from the estate of Schutten upon the theory that the proceeds of the check were disbursed for the payment of bills for necessaries incurred for the benefit of Schutten. The petition was denied. The check is still in plaintiff's possession, and plaintiff still retains the $142.90 paid to it by Schutten.

Plaintiff's contentions upon this appeal are, first, that plaintiff's employee had no authority to indorse the check, or to cash it; and, second, that there was no such ratification by plaintiff as would render it liable upon the unauthorized indorsement.

The civil court found as a fact that the indorsement of this check was made by plaintiff's cashier without the actual, apparent, or implied consent or authority of plaintiff company; that the check was indorsed for accommodation purposes only; that defendant bank knew or should have known this fact; that the bank knew that no one had any right to transact any business in relationship to the said account of plaintiff other than the three persons whose signatures were

filed upon the signature card. It also found that the attempts of plaintiff to secure the indorsement of the check and holding the check thereafter did not amount to ratification.

It was the view of the circuit court that since plaintiff for a period of approximately one and one-half years after knowledge of the facts by its principal officers failed to raise any question or make any objection to the regularity of the indorsement or the right of the defendant to make payment in accordance therewith; since it retained the check and attempted to secure its proper indorsement; and since it had retained the money which it received out of the proceeds of the check, it thereby ratified the transaction, assuming that act of its employees in procuring the check to be cashed by means of the rubber stamp indorsement was unauthorized.

We see no escape from this conclusion. In *Walter v. Four Wheel Drive Auto Co.* 213 Wis. 559, 252 N. W. 346, this court said:

" 'When an agent acts in excess of the authority conferred upon him, and the person for whom he has undertaken to act is fully notified of what has been done, it becomes the duty of the principal to either affirm or disaffirm the act of the supposed agent within a reasonable time after such notice or he is bound by such act.' "

See also *Commonwealth Telephone Co. v. Paley*, 203 Wis. 447, 233 N. W. 619.

In addition to this, it is held that the retention of the avails of an unauthorized contract made for the benefit of a principal by one assuming to act as his agent, with full knowledge of the facts, constitutes a ratification of the unauthorized act. *Gnat v. Westchester F. Ins. Co.* 167 Wis. 274, 167 N. W. 250; *Twentieth Century Co. v. Quilling*, 136 Wis. 481, 117 N. W. 1007; *McDermott v. Jackson*, 97 Wis. 64, 72 N. W. 375; *Fraser v. Ætna Life Ins. Co.* 114 Wis. 510, 90 N. W. 476.

The affirmance or ratification by a principal is of the whole transaction, and not merely the portion of it that is of benefit

to him. Restatement, Agency, § 96; *Paine v. Wilcox*, 16 Wis. * 202, 215.

The only basis for a claim of prompt repudiation of the agent's authority is the fact that on September 18, 1930, plaintiff drew a check upon defendant for an amount large enough to include the $1,500 theretofore charged back. While it may be that this conduct was impliedly inconsistent with an admission that the employees had authority to indorse and cash the check, it was entirely too equivocal to be evidence of repudiation or to give to the bank notice that repudiation was intended. When balanced against the other facts presented by the record it carries no weight.

*By the Court.*—Judgment affirmed.