SKILLMAN LUMBER CO. *v.* LOVE.

CONTRACTS—CANCELLATION—REVIVAL OF CONTRACT.

Where plaintiff gave a written order for four cars of lumber, with the condition that if the first one was satisfactory the other three could be shipped later, but the first car proving unsatisfactory plaintiff wrote not to ship any more until heard from, and later wrote canceling any unfilled orders, and defendant wrote he would not ship any more stock until the matter cleared up, and there is nothing to show that the minds of the parties met thereafter on said matter, the contract was canceled, and it was not revived by the later shipment of another car of lumber of a different kind and under different terms of payment from the original order.

Error to Kent; Vanderwerp (John), J., presiding. Submitted April 26, 1921. (Docket No. 99.) Decided June 6, 1921.

Assumpsit by the Skillman Lumber Company against John C. Love, doing business as the J. C. Love Lumber Company, for breach of a contract for the sale of certain lumber. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Norris, McPherson, Harrington & Waer,* for appellant.

*Travis, Merrick, Warner & Johnson,* for appellee.

STONE, J. The plaintiff-is a Michigan corporation doing business at Grand Rapids. Defendant is doing business at Pine Bluff, Arkansas, as J. C. Love Lumber Company. In this action plaintiff sued defendant to recover damages because of defendant's alleged breach of a contract to deliver to plaintiff two car loads of

lumber. Under the plea of the general issue the defendant gave notice that if any contract was made as alleged by plaintiff, it was, on or about March 28, 1919, canceled by the plaintiff by its refusal to accept further shipments thereunder, which cancellation rendered said contract of no further force or effect. The contract and the relation existing between the parties are, as testified to by plaintiff, "all fixed and determined by the correspondence," all of which was received in evidence and is embodied in the record. The case was tried by the court without a jury and resulted in a judgment for the plaintiff for $766 damages, and costs.

Defendant having requested special findings, the court below made and filed certain findings of fact and conclusions of law, and found that plaintiff was entitled to recovery for the following reasons:

"1. That there was a full, complete and definite contract between the parties for four cars of lumber which contract was never canceled by the parties.

"2. The defendant shipped two cars of lumber under the contract, but definitely refused to ship the other two cars of lumber to plaintiff, and has never done so.

"3. The defendant having breached the contract on November 2, 1919, the plaintiff is entitled to recover as his damages for breach of said contract the difference between the contract price and the market price at the time of the breach."

The defendant duly proposed amendments to said findings, all of which were refused, and exceptions were duly taken to such refusal.

Prior to February 21, 1919, there was some correspondence between the parties relative to lumber which defendant had for sale, and which plaintiff might purchase. An intelligent statement of the correspondence must necessarily be somewhat lengthy. After a careful reading and consideration of the record we

think that the following statement sets forth the dealings and material correspondence of the parties: On or about February 21, 1919, the plaintiff sent to the defendant its order 2,012 for lumber reading as follows:

"PURCHASING ORDER.
"Date: Feb. 21, 1919.
Our Order No. 2,012.
Shipping Date: See below.
Routing: See below.
"To J. C. LOVE LUMBER CO.,
"Address, Pine Bluff, Ark.
"Ship to Skillman Lumber Co.,
"Delivery, Grand Rapids, Mich.
"Charge to Skillman Lumber Co.

"Terms 2 per cent. off for cash in 10 days, net 90 days note from date of invoice.

"Four cars of approximately 15 M. feet each 5/4 No. 1 common to include the selects, plain sap gum at $35.50 per M. f. o. b. cars Grand Rapids, Michigan, buyer to pay war tax on freight bill.

"Lumber to be good widths, standard lengths, well manufactured, thoroughly dry, and no No. 2 common to be included. We must have a good straight car of No. 1 common, to be subject to the National Association rules of inspection.

"You may load one car of this stock at any time that suits your convenience, and ship it as stated above, and be sure to get our name right, and specify on the bill of lading, routing to be I. C. and P. M. from Chicago.

"If this car is satisfactory when it comes in, then we will take the other three cars to be shipped at the rate of one per month, or faster if we can get our customers to take it.
"Yours truly,
"SKILLMAN LUMBER CO."

On receipt of this order, and on February 24, 1919, the defendant wrote the plaintiff, in part, as follows:

"Replying to yours of the 21st, enclosing order for 5/4 common sap gum, we thank you for this business.

214—Mich.—26.

We are operating our business on a small capital and it is very necessary that our invoices are paid promptly, in order that we may continue in business. In selling you this stock it was our understanding that the terms were to be regular 2 per cent. off for cash, or 60 days net. We note on your order you have the terms 2 per cent. 10 days, or net 90 day note. We trust that you will be able to discount these invoices."

The first car of lumber shipped under order 2,012, being car 84,011, was invoiced February 28, 1919, and was received by the plaintiff on March 27, 1919. Plaintiff did not pay for the car on terms of 2 per cent. off for cash 10 days, net 90 day note from date of invoice, but paid for it with two notes dated April 19, 1919, and due respectively on July 16th and July 22, 1919. The date of the invoice was February 28th. The car was not satisfactory to the plaintiff, and, on the day of its receipt, plaintiff wrote defendant as follows:

"Please do not ship any more lumber on our order 2,012, until you hear from us again. This stock that you are sending us is not satisfactory to us. We are going to write you fully in a day or two."

On March 28, 1919, plaintiff again wrote defendant as follows:

"We are able to give you a report on the cars that have come in and been turned over to our customer, and been unloaded either by them or by ourselves in our yard, some of which have been refused by our customer because the stock was not what they bought, nor what we bought, and we have had them unloaded in our yard. We have commented on each car, and we cannot take any more of your stock, and neither can we settle for these cars, as we had agreed to do, for the reason that if the stock had been what we bought or bargained for, it could have gone direct to our customer, and we would have been able to give you a settlement as per the terms agreed upon. Now, please *cancel* any unfilled orders that you have from

us, and let us hear from you about the cars that we are reporting on."

The only unfilled order at that time, appearing in this record, was order 2,012, the one in question.

On March 31, 1919, defendant wrote plaintiff in part as follows:

"We want you to let us complete the 5/4 common sap order, and the writer will load this out himself, as we are anxious to find out just what grade your people require. We will not ship you any more stock until we get this matter cleared up."

To this letter there was the following reply by plaintiff, dated April 3, 1919:

"We note contents of yours of 31st of last month, and as stated in our previous letter, we do not want to take in any more of your lumber until such time as we come to a satisfactory settlement on what has been shipped."

On April 24th plaintiff wrote defendant as follows:

"Now, there are three cars of 5/4 No. 1 common still due us on order 2,012, and in a recent letter you said that you wanted to ship us these three cars to prove that you could load out yourself stock that was right. Please advise what your desire in the matter is."

In reply to this letter defendant wrote plaintiff as follows on April 27th:

"We can ship you the other cars 5/4 No. 1 common sap gum due on your order, but will have to ask you to pay us cash. We pay spot cash and discount all our bills, and we cannot pay for lumber with your notes. We would be glad to ship you this stock, and the writer will load same out, so we can see what kind of treatment your inspector is giving us. If you can pay for this stock cash, advancing 75 per cent. of invoice, wire us and we will ship at once."

In reply to this letter plaintiff wrote defendant on April 30th as follows:

"We note contents of yours of the 27th instant. * * * We dare not buy any lumber except on regular lumber terms of two per cent. off for cash in 10 days, or a 90 day note. Now, you can act at your own pleasure about furnishing these other cars of stock. This is stock that we can use provided you will ship us stock that is right, which you say you will do. We surely do not want any more lumber like what you have shipped us, even if we could have a year in which to pay for it. You can think it over and ship us a car now, if you want to, and another car a little later if it suits your convenience. Any- way advise us what you want to do."

To this letter the defendant replied on May 5th as follows:

"Our terms for selling lumber is 2 per cent. off in 10 days, 1 per cent. 30 days, 60 days net, from date of our invoice, bill-lading attached. Owing to the fact that your account is rather heavy with us just now, we would not care to ship you any more lumber, un- less you would agree to honor a sight draft for 98 per cent. of our invoice. We can get as much or more for this stock of 5/4 inch No. 1 common sap gum, as you are paying us, and the only reason we wanted to ship you another car was to find out just what kind of an inspector you had. The writer intended loading the car himself, so he could see. We think possibly we better let this matter drop until some of these notes are taken up, as we have been bitten by shipping people who have no rating, and we only shipped you this stock because some of our friends recommended your credit as being O. K. and we trust we will find it to be this way. We still have the car of 4/4 inch common and better red gum that we offered you some time ago."

To this letter plaintiff made no reply.

On May 19, 1919, the defendant wrote plaintiff as follows:

"We are going to ship you the car 5/4 inch No. 1 C sap gum, and are going to include a small per cent.

of 1 and 2 common same price you paid for last. If you cannot use the 1 and 2 wire us at our expense. We have instructed our inspector to make a bang up National grade, and he is a good inspector. We want to find out how your customers are on inspections. We will expect you to pay for this car with a 60 day note."

On May 23, 1919, plaintiff answered as follows:

"Answering your letter of the 19th instant. We note contents of your letter, and it would be entirely satisfactory to us to let the 1st and 2ds come forward with the No. 1 common. If you ship a car during the month of May, and you want us to give you a sixty day acceptance of it, it would come due the latter part of July, and that will be just at a time when the writer is away, but we will send you a note coming due somewhere between the 5th and the 15th of August, and we trust that this will be satisfactory to you."

Under date of May 24, 1919, the defendant wrote the plaintiff as follows:

"We wrote you the other day we were going to ship you another car of 5/4 No. 1 Com. gum including a small per cent. of F. A. S. (1st and 2ds) in order that we might see just how rigid your inspection is. We have instructed our man to make a bang up National grade on this stock, and we want you to see to it that we get a fair inspection."

The invoice for this car, which was 60,581, was dated May 24th. Plaintiff did not pay for it with a 60-day note, but with a note due August 26th.

Under date of June 26, 1919, the plaintiff wrote defendant the following letter:

"C. & E. I. car No. 60,581, your invoice of May 24, has arrived and been unloaded. This was a nice car of lumber and we were well pleased with it. We fell short in measurement about 100 feet, but our man found a few hundred feet more 1s and 2s than you reported, and figuring out his inspection, it falls short

of your invoice just exactly 30 cents.    That is very, very close.

| | |
|---|---|
| Amount of your invoice......................$440.86 | ❦ |
| Freight as per copy of freight bill enc..$143.78 | |
| June 4 note on account................ 240.86 | |
| Cash.................................. 56.22 | |

$440.86

"We have taken 2 per cent. discount on the amount of cash, leaving the net amount of the check enclosed $55.10.    If you can ship us lumber like this car, we will be glad to do more business with you, and wish you would send along the balance due us on that old order."

The correspondence contained in the record is so voluminous, and that part of it relating to the cars in question is so intermingled with other dealings not here involved, that it is difficult to make a clear statement of what is here material.    Further demands for the two cars of lumber were made by the plaintiff and refused by the defendant.    The two cars of lumber were never shipped.    Suit was begun, and a creditor of defendant was garnished.    The defendant has brought error.    The errors assigned cover all of the questions discussed by counsel.

It is claimed by defendant that the undisputed facts do not support the judgment; that the order (No. 2,012) given by plaintiff to defendant for four cars of lumber, provided that one car should be shipped immediately, and the order then specified:

"If this car is satisfactory when it comes in, then we will take the other three cars, to be shipped at the rate of one car per month, or faster if we can get our customer to take it."

It is argued by defendant that this was a definite order for *one car only,* plaintiff expressly reserving the right to take the other three cars, only if the one

car was "satisfactory when it comes in." The correspondence clearly shows that the first car when it came in was not satisfactory to the plaintiff. On March 27, 1919, the plaintiff wrote defendant as follows:

"Please do not ship any more lumber on our order No. 2,012, until you hear from us again. This stock you are sending us is not satisfactory to us. We are going to write you fully in a day or two."

On the next day the plaintiff clearly canceled the order for the three other cars in the following language:

"Now please cancel any unfilled orders that you have from us."

It is claimed by defendant that there never was a time thereafter when the minds of the parties met covering the sale and delivery of the other three cars. There is much force in the claim that the sale covered by order No. 2,012 was canceled by mutual consent. Defendant had written plaintiff under date of March 31st:

"We will not ship you any more stock until we get this matter cleared up."

Any other offer to ship later was based upon different terms and conditions. The correspondence taken as a whole shows, we think, a cancellation by mutual consent. The rule as to cancellation is stated in 35 Cyc. pp. 128, 130, as follows:

"The power to rescind a sale by agreement is coextensive with the power to contract, and the mutual release of the rights of the parties under the contract of sale is regarded as a sufficient consideration for the agreement.    *    *    *    The agreement to rescind may be by parol, and it is not essential that a party in express terms consent to the rescission, but such consent may be implied from his acts or conduct."

We are unable from this record to point to any date, after the letters of March 27th and 28th, when the minds of the parties met as to the other cars referred to in the original order, when plaintiff agreed to buy and defendant agreed to sell the two cars of lumber sued for.

But conceding that the minds of the parties met, as claimed by the plaintiff, on February 24, 1919, when the order was accepted, and as seems to be conceded by defendant's counsel in their reply brief, it seems clear to us that the order was later canceled, as we have already indicated. The language contained in plaintiff's letter of April 30th (in answer to defendant's letter of April 27th in which he had offered to ship a car for cash) is very significant. It was as follows:

"Now, you can act at your own pleasure about furnishing these other cars of stock. This is stock that we can use, provided you will ship us stock that is right, which you say you will do. We surely do not want any more lumber like what you have shipped us, even if we could have a year to pay for it. You can think it over, and ship us a car now, if you want to, and another car a little later, if it suits your convenience."

This is hardly the language of a party who supposed that he had a binding contract with another. On the contrary, it indicates that plaintiff did not consider itself bound in any way to take additional stock, and that it did not consider that defendant was bound to deliver additional stock. Defendant replied to this letter on May 5th, stating:

"Owing to the fact that your account is rather heavy with us just now, we would not care to ship you any more lumber unless you would agree to honor sight draft for 98 per cent. of our invoice."

To this letter plaintiff made no reply.

We repeat that from the record we are unable to point to a time subsequent to March 28th when the minds of the parties met on the purchase and sale of the two cars of stock involved in this suit. The fact that the defendant did ship a second car of lumber was, under the circumstances, in no way a recognition of the existence, or of the revival of a binding contract. It contained a different kind of lumber, and the terms of payment differed from the original order. Special reasons were given for its shipment, as is shown by the correspondence. Certainly there was no recognition of a duty to ship the two other cars of stock which are the subject-matter of this suit.

Upon the whole record we are of the opinion that the correspondence, which comprises the undisputed facts of the case, establishes and supports the conclusion of law that the original order was canceled by the parties, and that at no time thereafter was there a binding agreement for the purchase and sale of the two cars of stock here involved.

It follows that the judgment below must be reversed, and no new trial will be granted.

STEERE, C. J., and WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.