READER, Appellant, vs. FRANK H. APPLEGATE, INC.,
Respondent.

*February 10—April 27, 1937.*

The cause was submitted for the appellant on the brief of *Wilbershide & Baumblatt* of Racine, and for the respondent on that of *Beck, Smith & Heft* of Racine.

The following opinion was filed March 9, 1937:

NELSON, J. The material facts are substantially as follows: On July 1, 1935, the plaintiff went to defendant's garage and advised one Gorton, a salesman employed by the defendant, that he was interested in purchasing a certain used Ford sedan which his son had seen on display. Gorton advised the plaintiff that that Ford was sold, but that he had for sale a used two-door Ford coach. One Rogers, defendant's sales manager, was present at the time and looked at the plaintiff's Chrysler sedan which the latter desired to trade in on a deal. Rogers advised the plaintiff that the best allowance he could make on the Chrysler was $195. The plaintiff then asked Gorton whether he could not give him a better trade-in, to which Gorton replied:

"But Mr. Rogers is sales manager and I can't do any better."

At Gorton's suggestion, the plaintiff again spoke to Rogers, who suggested that the plaintiff leave his Chrysler at the garage; that he would try to sell it; that if he could get more

than $195 for it, he would allow the plaintiff the amount of the price obtained; that to hasten the sale of it the defendant would put it on its special sales platform; and that in the meantime the plaintiff might use an old Graham car which the defendant had for sale. On July 3d, the plaintiff again went to the defendant's garage for the purpose of closing a deal on the Ford coach. He met Gorton on the defendant's lot and asked why his Chrysler had not been put up for sale on the special platform as promised, and was advised that they were too busy, but that the $195 allowance proposition still stood. After trying for some time to get a better allowance from Gorton on his Chrysler, the plaintiff told him to go ahead and make out the order on the basis of the original proposition, namely, the defendant would sell the Ford coach to the plaintiff for $465 and allow him $195 for his Chrysler. Gorton thereupon went to the defendant's office and proceeded to draw up the papers to close the deal. In the meantime the plaintiff made out his check for $20, the agreed amount of the down payment, and delivered it to Gorton. At that point Gorton remarked:

"That's as far as I can go, the order has got to be O. K.'d by Mr. Rogers."

Gorton then called Rogers and asked him if he wanted to O. K. the order. Rogers stated that he wanted to try out the Chrysler first, whereupon Rogers, in the company of appellant's son, went out to test the car. When they returned, Rogers turned to Gorton and said that the car was pretty noisy and that the defendant would be lucky to sell it for $175, but added:

"O. K. Make out the order."

Gorton then drew up the contract on defendant's form and delivered a copy thereof to the plaintiff. The contract was signed by the plaintiff and by Gorton and also contained the words:

"Approved and accepted by C. M. Rogers."

Gorton testified at the trial that he had signed Rogers' name to the contract merely as an office record for later reference. The plaintiff, at Gorton's request, then signed an application for "transferred vehicle," an application for an automobile license and title for the Ford, an application for a loan directed to the Commercial Finance Company, with the understanding that the plaintiff was to pay $24.75 per month in payment of the balance due on the Ford coach, together with a conditional sales agreement and purchaser's statement. Most of the latter blanks were to be completed by the defendant by inserting the necessary information. Gorton then handed the keys to the Ford coach to the plaintiff. At about the same time one Dooley, a workman in defendant's garage, appeared at the entrance to the workshop and told the plaintiff that his car was ready. It was then suggested by the plaintiff's son that the oil ought to be changed, and he also asked Gorton to make another pair of keys for the Ford, as both he and his father used it. Plaintiff's son then turned the keys over to Gorton so that duplicates might be made. The plaintiff's son looked into the workshop and observed that the Chrysler was already undergoing repairs. Shortly thereafter Frank Applegate, the president of the defendant, appeared, called Gorton aside and spoke to him. Gorton thereafter advised the plaintiff that the deal was off. He said:

"Applegate won't take it. I guess the profit is too thin."

Shortly thereafter Applegate advised the plaintiff that he did not want the Chrysler, that he would allow the plaintiff $195 on the Graham automobile which the defendant had permitted the plaintiff to use for several days, but not on the Ford. He requested the plaintiff to return his duplicate signed contract, but the plaintiff refused to do so. The plaintiff did not have his certificate of title with him, so he sent it to the defendant within fifteen or twenty minutes after leaving the garage. Suit for specific performance was com-

menced on July 6, 1935, by serving upon the defendant a summons, complaint, and order to show cause why the defendant should not be restrained from disposing of the coach pending the trial of the action. The defendant, however, had already sold the coach to another, so the plaintiff amended his complaint and asserted a cause of action for damages. On July 21st, when a hearing was had on the order to show cause, Applegate stated to the plaintiff that the plaintiff's Chrysler was at his garage, and that the plaintiff could have it at any time he would deliver up the contract for the Ford and pay something like $1 a day for storage. The plaintiff thereupon threatened to replevin the car, and Applegate then said that he would waive the storage charges. The plaintiff, on the same day at about 5 o'clock in the afternoon, went to the defendant's garage, took possession of the Chrysler and drove it away. Later on plaintiff traded the Chrysler for a secondhand Plymouth, being allowed on that deal a credit of only $135. Recovery of $60, the difference between the allowance contracted for in the Ford deal and that obtained by him in the Plymouth deal, was sought in the action. Upon the closing of the testimony, the court stated:

"I think no contract resulted and that the plaintiff has no cause of action."

Formal findings of fact and conclusions of law were thereafter made and signed by the court.

The plaintiff earnestly contends that, while it appears from the testimony given by Gorton and Applegate upon the trial that neither Gorton nor Rogers had express authority to close a used-car deal without the approval of Applegate or some other officer of the corporation, the undisputed facts show that Rogers, as sales manager, had apparent authority as an apparent agent of the defendant to deal with the plaintiff as he did, and accordingly bound the defendant. *McDermott v. Jackson,* 97 Wis. 64, 72 N. W. 375; *Voell v. Klein,* 184 Wis.

620, 200 N. W. 364; *Zummach v. Polasek,* 199 Wis. 529, 227 N. W. 33; *Walter v. Four Wheel Drive Auto Co.* 213 Wis. 559, 252 N. W. 346; *Hansche v. A. J. Conroy, Inc.,* 222 Wis. 553, 269 N. W. 309. The court was apparently of the opinion that, since neither Gorton nor Rogers had express authority to close the deal, no contract resulted, and therefore the plaintiff had failed to prove his case. Had the plaintiff, subsequent to the repudiation of the deal by the defendant, left the Chrysler car in the defendant's charge and keeping and sued for damages, we should be inclined to hold, upon the undisputed evidence, that the plaintiff, in dealing with Gorton and Rogers, had a right to rely upon their apparent authority to act for the defendant in its place of business and that their actions bound the defendant. The plaintiff, however, did not so act. After he found out that the Ford coach had been disposed of, and that he could get the Chrysler back without paying the storage charges thereon, which at first were demanded, he proceeded to take possession of it and to exercise full dominion over it as the owner thereof. There is nothing in the evidence tending to show that when the plaintiff went to the defendant's garage and took possession of the Chrysler that he gave notice to the defendant that he would hold the car subject to its order, sell it for its account or for the purpose of minimizing his damages. He simply took possession of the Chrysler and thereafter resold it to another. This conduct on his part amounted, in our opinion, to a complete acquiescence in defendant's rescission, repudiation, or abandonment of the deal, and amounted to and constituted a rescission of the deal on his part. *Deno v. Hersh,* 158 Wis. 502, 149 N. W. 145; *Avery Planter Co. v. Peck,* 80 Minn. 519, 83 N. W. 455, 83 N. W. 1083; *Skillman Lumber Co. v. Love,* 214 Mich. 399, 183 N. W. 210; *Greder v. Stahl,* 22 S. D. 139, 115 N. W. 1129; 55 C. J. p. 256, § 228.

The plaintiff obtained from the defendant, when he accepted delivery of the Chrysler, everything of value which he had turned over to the defendant except his check for $20, which he had refused to accept when tendered to him, and which has never been cashed. After taking possession of the Chrysler he was in no position to claim damages.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on April 27, 1937.